# DORSEY *v.* STATE DEPARTMENT OF SOCIAL SERVICES

[No. 366, September Term, 1971.]

*Decided June 29, 1972.*

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Curtis L. Decker,* with whom was *C. Christopher Brown* on the brief, for appellant.

*Judson P. Garrett, Jr., Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

In this case a father contributes to the support of his

child an amount greater than that determined by the Department of Social Services (the State Department) as the subsistence need for a single child. Other children in the home are not being so well supported by their father. Neither father resides in the home. The question then presented is whether the State Department is correct in considering the larger support payment as a resource available to the other children in the home to whom the contributor owes no responsibility.

This case arises under the Aid to Families with Dependent Children (AFDC) program, formerly known as "Aid to Dependent Children." As we indicated in *Murray v. State Department of Social Services*, 260 Md. 323, 272 A. 2d 16 (1971), and as Chief Justice Warren indicated in *King v. Smith*, 392 U. S. 309, 88 S. Ct. 2128, 20 L.Ed.2d 1118 (1968), this program came into being with the passage of the Social Security Act of 1935, 49 Stat. 620 (1935), as amended, 42 U.S.C. §§ 301-1394, Subchapter IV of which (42 U.S.C. §§ 601-609) sets up the AFDC program.

Appellant, Elsie A. Dorsey, is the recipient of a grant under that program through the Anne Arundel County Department of Social Services (the County Department). She has four children residing in her home. Support for three of the children is paid by the father to the County Department. This is an amount less than that which the State Department regards as essential for the maintenance of these children. A fourth child, Lisa Dorsey (Lisa), resides in the home. Pursuant to a court order the sum of $24.25 per week is remitted to Mrs. Dorsey from Lisa's father through a court in Baltimore City, 75 cents per week being deducted from his $25.00 contribution for handling charges.

Prior to July, 1970, Mrs. Dorsey received from the County Department the sum of $201.00 to cover the needs of herself and three of the children, this being broken down as $51.00 for rent and $150.00 subsistence needs for food and clothing. In addition, of course, she had the $24.25 per week from Lisa's father.

In July of 1970 the County Department insisted that Lisa be counted as a part of the "assistance unit." Needs for five people were computed at $229.00 ($51.00 for rent, $178.00 for subsistence needs). The County Department subtracted Lisa's support money from those estimated needs and remitted only $123.92. The County Department and the State Department rest upon Rule 200, Section IV A(4), of the State Department which requires inclusion in the assistance unit of all children under 18 in the home "regardless of whether or not assistance is requested on their behalf, except the child who earns more than his assistance needs or for whom a statutory benefit exceeds his assistance needs, shall be excluded, if it is to his advantage." Insight into the possible meaning of the term "statutory benefit" may be derived from Handbook of Public Assistance Administration, Part IV, § 3140 which states:

"6. *Other Statutory Benefits*

"In addition to OASDI, other statutory benefits to which applicants and recipients for public assistance may qualify, include unemployment insurance, temporary disability insurance, railroad retirement benefits, civil service retirement benefits, other government retirement benefits (Federal, State, county and local), and veterans benefits.

"It is important that the State's policies and procedures for determining eligibility on the basis of need include clear instructions to staff for identifying cases in which such statutory benefits might be a resource, and, with respect to such cases, the process of determining the availability of such resources." [1]

Mrs. Dorsey appealed unsuccessfully, first within the

---

1. There is an indication that this particular portion of the Handbook has been replaced by regulations, although there is no regulation on this particular subject. We are advised, however, that the interpretations in the Handbook "continue to have meaning."

State Department and then to the Baltimore City Court. She will be more successful here.

In the AFDC program a needy child is defined (42 U.S.C. § 606(a)) as one "who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent" and who is living with certain specified individuals. Code (1957, 1969 Repl. Vol.) Art. 88A, § 45 (c) contains a similar definition. Under 42 U.S.C. § 602(a):

> "A State plan for aid and services to needy families with children must . . . (7) . . . provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid, as well as any expenses reasonably attributable to the earning of any such income. . . ."

This case is factually similar to that of *Gilliard v. Craig*, 331 F. Supp. 587 (W.D.N.C. 1971). Precisely the same issue was involved, the presence in the home of a child who was being supported by his father in an amount in excess of that allowable by the North Carolina Board of Social Services in the computation of a budget for assistance purposes. A rule required the AFDC budget "to include all eligible children in the home" and that there be taken into consideration "all income and any other resources immediately and regularly available." The case was heard by a three judge district court.[2] The court saw four main points, namely that all of the parties plaintiff were "threatened by the defendants' action," that inclusion of the child "in the 'class' against the will

---

2. We understand that the case is currently before the Supreme Court of the United States.

of his parents violate[d] the Social Security Act," that the inclusion of the support payments "as a resource available to the entire family work[ed] an unlawful appropriation of the funds of both father and son, and violate[d] the intent and meaning of the federal statute and the North Carolina regulations themselves," and that the defendants "improperly presumed that the support payments by [the father] were available to the family at large." On the latter point the court said:

"Recent decisions have made it clear that those administering aid to dependent children may not presume the availability to an AFDC family of the income of a 'man in the house' or a man assuming the role of spouse or a stepfather owing no legal duty of support. King v. Smith, 392 U.S. 309, 88 S. Ct. 2128 (1968); Lewis v. Martin, 397 U.S. 552, 90 S. Ct. 1282, 25 L.Ed.2d 561 (1970); Solman v. Shapiro, 300 F.Supp. 409 (D. Conn., 1969) (affirmed 396 U.S. 5, 90 S. Ct. 25, 24 L.Ed.2d 5 (1969)). If the income of an individual with no legal duty of support is not available to the family, then on like principle the contribution to the support of Samuel Davis, Jr. by one having no legal duty to support the rest of the family can not be considered a resource available to that family." *Id.* at 593.

A similar result was reached in *Bourque v. State of Conn. Commissioner of Welfare,* (App. Div., Cir. Ct., Conn. 1972). [File No. CV11-7012-5485 AP, decided May 12, 1972, decision announced May 18, 1972.]

The State Department regards *Dandridge v. Williams,* 397 U. S. 471, 90 S. Ct. 1153, 25 L.Ed.2d 491 (1970), *rehearing den.* 398 U. S. 914 (1970), as relevant. There litigants sought unsuccessfully to strike down as a violation of the equal protection clause of the 14th Amendment to the Constitution of the United States a regulation of the State Department which placed an absolute

limit of $250 per month on the amount of a grant under the AFDC program, regardless of the size of the family and its actual need. A three judge court in Baltimore had held the Maryland regulation invalid. In reversing that court Mr. Justice Stewart said for the Supreme Court:

> "We need not explore all the reasons that the State advances in justification of the regulation. It is enough that a solid foundation for the regulation can be found in the State's legitimate interest in encouraging employment and in avoiding discrimination between welfare families and the families of the working poor."
> *Id.* at 486.

We do not regard *Dandridge* as apposite. There an overall limitation on assistance was placed. Here, paraphrasing the language used by the *Gilliard* court, the mother has the Hobson's choice of applying the Dorsey contribution to the benefit only of Lisa or of improperly using some or all of that contribution for the benefit of herself and the other children. These choices require Mrs. Dorsey and the other children either to exist on less or to become the beneficiaries of the Dorsey contribution which Dorsey and Lisa have the right to expect will go to support only Lisa.

It will be noted that if Dorsey were deceased and the same number of dollars per month were coming in for Lisa from her father's Social Security benefits or from some benefit through the Veterans Administration, this would be considered a statutory benefit and those funds would not need be taken into consideration.

At argument it was indicated that the reason for the requirement as to a "statutory benefit" was because of its certainty, yet if Lisa's father died leaving a life insurance policy in which he exercised a settlement option under which she was to be paid by that company the same amount per month as she is currently receiving, the payment would be no less certain, but it could hardly be called a statutory benefit. In fairness, it should be

said that counsel for the State Department indicated such a payment might be considered by the State Department as a statutory benefit, but the language of the rule would seem to bar such a construction.

In *King v. Smith, supra,* there was under attack a regulation of the Alabama Department of Pensions and Security, a "so-called 'substitute father' regulation," which denied AFDC payments to the children of a mother who cohabited in or outside her home with any single or married able-bodied man. The regulation was struck down as not being a permissible one under the Social Security Act. In the course of that opinion Chief Justice Warren said:

> "There is no question that States have considerable latitude in allocating their AFDC resources, since each State is free to set its own standard of need and to determine the level of benefits by the amount of funds it devotes to the program. See Advisory Commission Report, *supra,* at 30-59. Further, there is no question that regular and actual contributions to a needy child, including contributions from the kind of person Alabama calls a substitute father, can be taken into account in determining whether the child is needy. In other words, if by reason of such a man's contribution, the child is not in financial need, the child would be ineligible for AFDC assistance without regard to the substitute father rule. The appellees here, however, meet Alabama's need requirements; their alleged substitute father makes no contribution to their support; and they have been denied assistance solely on the basis of the substitute father regulation. Further, the regulation itself is unrelated to need, because the actual financial situation of the family is irrelevant in determining the existence of a substitute father." *Id.* at 318-20.

In footnote 16 the Court said:

> "Regulations of HEW, which clearly comport with the statute, restrict the resources which are to be taken into account under § 602 to those 'that are, *in fact,* available to an applicant or recipient for current use on a regular basis. . . .' [Citing IV Handbook of Public Assistance Admin. § 3131(7)]. This regulation *properly excludes* from consideration resources which are merely assumed to be available to the needy individual." (Emphasis added.)

The above footnote was cited and relied upon by the court in *Solman v. Shapiro,* 300 F. Supp. 409, 415 (D. Conn. 1969), *aff'd,* 396 U. S. 5, 90 S. Ct. 25, 24 L.Ed.2d 5 (1969). A Connecticut statute and regulation required that the income of a stepparent in whose home children might be living be taken into consideration in determining need. The state pointed to the provisions of § 602-(a)(7) which we have previously quoted relative to considering the needs and income of an individual living in the home in determining the needs of the child. The court held that the Connecticut statute was in contravention of 42 U.S.C. § 602(a)(7) "as interpreted in *King v. Smith* and of the regulations issued by HEW." The court said:

> "With respect to children who are beneficiaries of AFDC payments, the income of a stepparent cannot be assumed to be available to his stepchildren living in the same home with him. The stepfather is neither a 'relative claiming aid' nor an essential person. His income or his resources may be taken into consideration only if they are actually available for the use of the children. To permit the Welfare Commissioner to predict that every stepfather will support his minor stepchildren, and even more demandingly, to conclusively presume that he will do so would

also be at odds with the federal regulation. Where the support of a child is at stake, the only relevant circumstance which may relieve the state of its duty to provide AFDC support for a needy child is whether its stepfather did in fact support the child." *Id.* at 415-16.

What we have here is not a ceiling on the amount of money which may be paid to any family as in *Dandridge,* but an insistence on the part of the State Department that funds paid for the benefit of a minor child should be considered in determining the total needs of the child. There can be no argument with that proposition until one reaches the point where the State Department in effect says that such funds in excess of a given amount are to be considered as a resource available for the support of other members of the family, people to whom no responsibility is owed by the source of the funds, but holds that if a similarly situated family receives a like amount of funds for a child from certain other sources such as the Veterans Administration or Social Security such funds should not be so expropriated. Such an attitude and such a regulation do not comport with our understanding of the equal protection clause of the 14th Amendment. Accordingly, a reversal is in order.

*Order reversed; appellee to pay the costs.*