Estella FRAZIER, et al., individually and on Behalf of all others similarly situated, Plaintiffs,

v.

David PINGREE, Secretary of Health and Rehabilitative Services, State of Florida, and Margaret M. Heckler, Secretary of the U.S. Department of Health and Human Services, Defendants.

No. 85–640 Civ–T–15.

United States District Court, M.D. Florida, Tampa Division.

July 2, 1985.

346

Michael A. Campbell and Maria L. Soto, Florida Rural Legal Services, Bartow, Fla., for plaintiffs.

Dennis I. Moore, Asst. U.S. Atty., Tampa, Fla., for defendant Heckler.

Harden King, Asst. Gen. Counsel for Dept. of Health and Rehab. Services, Tallahassee, Fla., for defendant Pingree.

## ORDER

CASTAGNA, District Judge.

This matter is before the Court on the plaintiffs' Motion For Preliminary Injunction. That Motion was set for hearing, and the Court heard argument from plaintiffs' counsel, as well as counsel for both of the governmental defendants. At the Court's request, counsel have submitted supplemental memoranda, and the matter is now ripe for determination.

This case was brought as a class action on behalf of certain minor children who receive insurance benefits under Title II of the Social Security Act and who have half-siblings qualifying for benefits under the Aid to Families with Dependent Children (AFDC) program, and also on behalf of the class of persons comprised of the minor class members' parents and care-taker relatives. The plaintiffs seek to enjoin the enforcement of rules promulgated by the Florida Department of Health and Rehabilitative services (HRS) and the United States Department of Health and Human Services (HHS) that require the inclusion of the minor class plaintiffs in AFDC assistance groups for purposes of computing AFDC allotments. In most cases the inclusion of the Title II minor plaintiffs in those groups results in a decrease in the AFDC group's financial payment from HRS, which according to the plaintiffs results in the improper use of the minor plaintiffs' Title II benefits by the entire assistance group. The plaintiffs therefore seek to enjoin the enforcement of various HHS and HRS rules and regulations contending that those administrative regulations violate the Social Security Act itself and numerous of the plaintiffs' constitutional protections. The defendants respond, of course, by asserting that their regulations are neither unlawful nor unconstitutional, and that in fact they comport fully with the Social Security Act and the Deficit Reduction Act of 1984 (DRA).

The Court has carefully examined the parties' submissions in their entireties, and it is clear that the exact issue before this Court is one that has been grappled with extensively by other courts in recent months. Counsel has cited three district court decisions finding in the government's favor on identical or substantially similar issues. *See Creaton v. Heckler,* Case No. 85–3306–R (C.D.Cal. Unpublished Order dated June 20, 1985); *Huber v. Blinzinger,* Case No. S 82–542 (N.D.Ind. Unpublished Memorandum and Order dated April 8, 1985); *Shonkwiler v. Heckler,* Case No. IP 84–1612–C (S.D.Ind. Unpublished Order dated February 20, 1985). Two contrary decisions support the plaintiffs' position here. *See White Horse v. Heckler,* Case No. CIV. 85–3006 (D.S.Dak. Unpublished Memorandum Opinion dated March 29, 1985); *Gorrie v. Heckler,* 606 F.Supp. 368 (D.Minn.1985). This Court need not recultivate in depth the grounds of the decisions in the aforementioned cases, those courts having considered in detail the respective arguments that have been presented by the parties to this case. Rather, this Court finds the rationale set forth in Judge Porter's *White Horse* Opinion and in Judge Lord's *Gorrie* Opinion to be persuasive.

It is apparent to this Court, as pointed out in *White Horse,* that the core issue involved here is whether Congress implicitly or explicitly intended to alter the provisions of the Title II benefits legislation contained in Section 205(j), 42 U.S.C. § 405(j), and Section 208(e), 42 U.S.C. § 408(e), by enacting Section 2640(a) of the Deficit Reduction Act of 1984, Pub.L.No. 98–369, 98 Stat. 494, 1145 (1984). If not, the HRS and HHS regulations adopted in reliance upon that interpretation would be invalid. This Court preliminarily concludes, as did Judge Porter, that the ambiguous reference to § 205(j) in § 2640(a) and the legislative history of that section are simply not sufficient to indicate such an alteration of the core essence of the Title II benefits scheme—that those benefits are to be used *only* on behalf of the minor beneficiary. This Court might be more inclined to find such an implied repeal if the ques-

tion merely involved § 205(j), due to the mention of that section in the text of § 2640(a). *See* Appendix. But due to the criminal nature of § 208(e), the Court is extremely reluctant to read § 2640(a)'s ambiguous reference to § 205(j) as an implied repeal of § 208(e). Representative payees simply should not be required to rely on this bootstrapping argument, which is based on an ambiguous reference to § 205(j) to begin with, in light of the potential risk for criminal sanctions under § 208(e). As the Court noted in *Huber, supra,* at 5–6, a specific statute is not subject to repeal by implication by a later generalized statute absent a clear intention to do so. Contrary to the finding in *Huber,* however, no such clear intention to repeal the earlier criminal statute appears to the Court's satisfaction in this case.

The federal government additionally argues that "under prior law, if a Title II child was voluntarily included in the assistance unit by the caretaker relative, the Secretary never considered the representative payee's use of OASDI benefits for other family members to be a violation of section 208(e)." Federal Defendant's Brief (D #20), at 21. Although the Affidavit of Harris G. Factor (D #21), at paragraph 5, corroborates this statement relying upon State Letter No. 1088 attached to the Affidavit, that Letter clearly states the further requirement that the Title II child may be included in the AFDC family unit *only* where the end result is a benefit to the child that would not otherwise result. The defendant's argument that the conduct required here of using the Title II benefits for other family members falls within this prior permissible conduct is not accurate. As in the case of the named plaintiffs, such action will clearly diminish the benefits received from the Title II payments by the minor recipient, as the family unit's AFDC income will be almost totally wiped out and the only other income is the Title II benefits. The defendants would be hard put to classify that result as "clearly advantageous" to the minor child as required under Letter No. 1088.

The federal defendant has also argued that the secretary is in the process of promulgating new regulations to harmonize its view of a payee's obligations under Title II with the new requirements of the DRA. Even if this is true, the Court notes that named plaintiff Doris Johnson is still under direction from HHS to use the Title II benefits for only the minor beneficiaries' benefit. *See* Appendix III–3, HHS Letter affixed to the Affidavit of Doris Johnson. At any rate, in light of the Court's earlier conclusion as to the repeal issue, the validity of any new regulations permitting the use of Title II benefits for other family members and/or decriminalizing such behavior would be subject to serious question.

And as a final matter, the Court notes that there are apparently serious inconsistencies arising from the treatment of the Title II benefits depending upon the status of the representative payee as either custodial or non-custodial. As the plaintiffs point out in their Supplemental Memorandum at 3–4, the new regulations permit different treatment of Title II benefits for AFDC purposes depending upon the status of the representative payee. That distinction has been carried though in the Florida Administrative Code with a distinction as to the form of the benefits conferred on the Title II minor by a non-custodial payee. In sum, the end result is that a non-custodial payee may confer the entire Title II benefits on the minor beneficiary in the form of merchandise or other non-cash benefits, and those benefits would not qualify as family income for AFDC purposes. Fla. Admin.Code 10C–1.102(1). The result, illogically, is that a non-custodial payee can circumscribe the inclusion of the Title II benefits in the AFDC allowance computation entirely, while the custodial payee can not do so. While this inconsistency itself will not result in invalidation of the regulations in question, the Court views this result as indicative of confusion as to whether the "sole use" standard under Title II has in fact been repealed.

■ In reaching this conclusion, the Court is mindful of the authority cited by the federal defendant requiring that substantial deference be extended by the courts to the responsible agency's interpretation of legislation for which it bears the responsibility of administering, so long as that interpretation is reasonable and consistent with the underlying congressional purpose for the legislation. The problem is that here, this Court must balance this deference against the constraints of implied repeal and the potential criminal ramifications stemming therefrom. In short, the Court recognizes Congress' intent to reduce the federal deficit by passing the DRA, but there is not a sufficient indication that by that action Congress also intended to alter the very foundations of the Title II program, with the corresponding consequences that would accompany such drastic action.

■ With this preliminary evaluation in mind, the Court notes that this matter is presently before the Court on the plaintiffs' Motion for Preliminary Injunction. The four classic prerequisites for granting such extraordinary relief are: 1) a substantial likelihood of ultimate success on the merits; 2) irreparable injury arising from the denial of injunctive relief; 3) that the threatened injury to the plaintiff outweighs the harm to the defendant resulting from the injunction; and 4) that issuance of the injunction will not disserve the public interest. *Canal Authority v. Callaway*, 489 F.2d 567 (5th Cir.1974). The Court finds that each of these requirements has been met. In light of the preceding discussion, the plaintiffs of course have a substantial likelihood of success on the merits, and the Court has not even addressed the substantial constitutional questions raised in the remaining five counts of the complaint. Irreparable injury will also arise from both the irreversible economic consequences and potential damage to the plaintiffs' familial life stemming from the defendants' actions. Finally, the Court finds that the injunction would serve the public's interest and that any harm to the defendants would be outweighed by the injuries occasioned upon the plaintiffs, having considered the effect of the injunction upon the respective pocketbooks of the federal budget and the destitute individuals involved here. As both the plaintiffs' and defendants' arguments on this score implicitly recognize, the propriety of issuing an injunction in this case to a large degree turns upon the Court's perception of the strength of the merits and whether the statutory fiscal scheme involved would be frustrated or promoted by such relief. Having found in the plaintiffs' favor in this regard earlier, the Court can now hardly find that the denial of an injunction would promote the statutory scheme found in the DRA as urged by the defendants.

■ The final matter for the Court's determination at this time is the question of whether this case should be certified as a class action, and the related question of the scope of the injunctive relief to be granted. The defendants urge that this matter need not be certified as a class action under F.R.Civ.P. 23(b)(2) inasmuch as any relief granted on behalf of the named plaintiffs would necessarily affect any prospective class members. The problem with this argument is that it assumes that any injunctive relief granted on behalf of the named plaintiffs by this Court would necessarily encompass the prospective class members. The defendants simply assume too much. An injunction preventing enforcement of the regulations in question as against the named plaintiffs only would not prohibit the general enforcement of those regulations against the prospective class members.

Furthermore, it is true that *Edelman v. Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974), would prohibit the restoration of past unpaid benefits to members of the prospective classes. For that reason, failure to certify a class at this time would result in an unremediable loss of benefits should the defendants decline to apply the Court's decision regarding the named plaintiffs to the prospective plaintiff classes as a whole. Finally, the Court per-

ceives the defendants' concerns about the increased costs and inefficiency of litigating this matter as a class action to be greatly exaggerated. The issues involved in this case are largely legal issues of interpreting the DRA, Title II and the administrative regulations promulgated thereunder. The Court does not anticipate that substantial discovery would be required as to the elements necessary to challenge class certification, and any costs that might be incurred would certainly be less than the cost of litigating numerous individual suits. Due to the nature of the claims presented, the type of relief sought, and the indigent status of the prospective plaintiffs involved, this Court cannot imagine a more appropriate case for proceeding efficiently under the auspices of Rule 23. Alternatively, of course, should the defendants at a later time agree to be bound by and to apply the Court's decision as to the named plaintiffs to any similarly situated prospective class members, the Court might well consider the decertification of any previously certified classes for purposes of simplifying the litigation.

Turning then to the four prerequisites for class certification under Rule 23(a), the Court finds that joinder of all prospective plaintiffs would be impractical due to the estimated number of plaintiffs "far exceeding 100" persons; that all of their claims are typical in that the challenged regulations operate against all in the same manner; that the named plaintiffs clearly fall within and have consistent interests with the prospective classes; and that plaintiffs constitute adequate class representatives, both as individuals and as to the counsel they have retained. This Court consequently determines that this matter should be preliminarily certified as a class action as set forth below.

Based upon the foregoing, it is accordingly

ORDERED:

1. The plaintiffs' Motion For Preliminary Injunction is GRANTED. The defendants are enjoined from enforcing any regulation, including but not limited to 45 CFR § 206.10(a)(1)(vii)(B) (1984), 49 Fed. Reg. 35589, Rule 10C–1.101(1)(a), Rule 10C–1.102(1)(c), and Fla. emergency rule 10 CER 84–6, against the plaintiff class members designated below in such a manner as to *require* the inclusion of the Title II beneficiaries in Class 1 in the AFDC assistance group containing their custodial payees designated in Class 2.

2. On or before July 19, 1985, both defendants are to file notices with this Court acknowledging their compliance with this Order. Those notices shall set forth the steps taken by the defendants to ascertain the members of the prospective classes and to ensure compliance with this Order.

3. The plaintiffs' Motion For Class Certification is GRANTED. The following two classes are provisionally certified pursuant to Fed.R.Civ.P. 23(b)(2):

CLASS 1: All children (suing by and through their natural guardians and next friends) in the State of Florida who receive Child's Insurance Benefits under Title II of the Social Security Act and who have half-brothers or -sisters who (i) are dependent children as defined in 42 U.S.C. § 602(a)(1), or (ii) would be dependent children but for the defendants' actions in deeming the class members' Title II benefits as income to the half siblings.

CLASS 2: All custodial parents and other care-taker relatives of the members of Class 1, which parents and relatives are also representative payees of the Child's Insurance Benefits of the members of Class 1.

4. Due to the plaintiffs' indigent status and the nature of this action, the plaintiffs are relieved of the bond requirements set forth in Fed.R.Civ.P. 65.

5. That the federal defendant's Motion to Dismiss is Denied.

6. On or before July 12, 1985, counsel for all parties are to confer and report to the Court the parties' respective intentions as to the future course of this litigation, including but not limited to:

a. The estimated length of time to complete discovery;

b. The extent and nature of discovery contemplated; and

c. Whether accelerated disposition of the merits is called for.

## APPENDIX

1. Section 2640(a) of the Deficit Reduction Act of 1984, 42 U.S.C. § 602(a)(38): (38) provide that in making the determination under paragraph (7) with respect to a dependent child and applying paragraph (8) the State agency shall (except otherwise provided in this part) include: (a) any parent of such child, and (b) any brother or sister of such child, if such brother or sister meets the conditions described in clauses (1) and (2) of 406(a), if such parent, brother, or sister is living in the same home as the dependent child, and any income of or available for such parent, brother or sister shall be included in making such determination and applying such paragraph with respect to the family (notwithstanding section 205(j), in the case of benefits provided under Title II); ....

2. Section 205(j) of Title II, 42 U.S.C. § 405(j):

**(j) Direct or indirect certification**

When it appears to the Secretary that the interest of an applicant entitled to a payment would be served thereby, certification of payment may be made, regardless of the legal competency or incompetency of the individual entitled thereto, either for direct payment to such applicant, or *for his use and benefit to a relative or some other person.*

3. Section 208(e) of Title II, 42 U.S.C. § 408(e):

Whoever—

(e) having made application to receive payment under this subchapter for the use and benefit of another and having received such a payment, knowingly and willfully converts such a payment, or any part thereof, to a use other than for the use and benefit of such other person; *shall be guilty of a felony....*