**MARYLAND DEPARTMENT OF HUMAN RESOURCES and Ruth Massinga, Secretary**

v.

**UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES and Otis R. Bowen, Secretary.**

**October BRITT, Mary Jacobs, and Dorothy Oldaker, Individually and on behalf of all others similarly situated, Cross-Plaintiffs,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Cross-Defendants.**

**MARYLAND DEPARTMENT OF HUMAN RESOURCES, et al.**

v.

**UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.**

Civ. A. No. M–86–605.

United States District Court, D. Maryland.

April 22, 1986.

As Amended May 20, 1986.

Stephen H. Sachs, Atty. Gen. of Maryland, Nancy B. Shuger and Mark J. Davis, Asst. Attys. Gen. of Maryland, Baltimore, Md., for State plaintiffs.

Peter M.D. Martin, Rochelle Gordon, Marian McKennan, and Seri Wilpone, and Legal Aid Bureau, Inc., Baltimore, Md., for cross-plaintiffs.

Breckinridge L. Willcox, U.S. Atty. for Maryland, Larry D. Adams, Asst. U.S. Atty., Donald A. Gonya, Chief Counsel for Social Sec., Randolph W. Gaines, Deputy Chief Counsel for Social Sec. Litigation, John B. Watson, Chief, Assce. Payments Litigation Branch, and Karen Cornick-Dandridge, Office of General Counsel Social Sec. Div., Dept. of Health and Human Services, Baltimore, Md., for defendants and cross-defendants.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

This case began as separate actions. On February 21, 1986, individual plaintiffs October Britt, Mary Jacobs, and Dorothy Oldaker filed a class action suit against Otis R. Bowen, Secretary of the United States Department of Health and Human Services (HHS), and Ruth Massinga, Secretary of the Maryland Department of Human Resources. The individual plaintiffs are welfare mothers who assert that a new federal regulation, 45 C.F.R. § 206.10(a)(1)(vii)(B), and a concomitant Maryland regulation, COMAR 07.03.02.02B(1)(a), altering the formula for calculating payments under the federal Aid to Families with Dependent Children (AFDC) program, result in drastic and illegal reductions in their benefits.

The defendant Bowen is responsible for the administration, operation, and enforcement of the AFDC program. The defend-

ant Massinga is responsible for the enforcement of the federal AFDC regulations in Maryland. The plaintiffs seek declaratory and injunctive relief (M–86–604, Paper No. 1), class certification (*id.*, Paper No. 2), a preliminary injunction (*id.*, Paper No. 3), and leave to proceed *in forma pauperis* (*id.*, Paper No. 4).

A short time later, on February 24, 1986, the Maryland Department of Human Resources and Ruth Massinga filed suit against HHS and Otis Bowen over the same federal regulation, seeking declaratory and injunctive relief (M–86–605, Paper No. 1). Maryland contends the new federal AFDC regulation disrupts the state's child support laws and costs Maryland more for AFDC grants (*id.*).

On March 6, 1986, the court consolidated the two suits for all purposes into Civil Action No. M–86–605 (M–86–604, Paper No. 6; M–86–605, Paper No. 4). The consolidating order provided that the claim of the individual plaintiffs be treated as a cross-claim against the state and federal defendants.

At the hearing held on April 10, 1986, the court, for reasons then orally stated, granted the amended class certification motion of the individual plaintiffs (*id.*, Paper No. 2).

At the request of the court, the parties have filed stipulations of fact (M–86–605, Paper No. 5). There being no disputed evidentiary matters, the court ordered the trial of the consolidated action on the merits to be advanced and consolidated with the request for preliminary injunction. Rule 65(a)(2), Fed.R.Civ.P. The entire matter was heard by the court on April 10, 1986.

## Factual Background

The relevant facts are as follows: The AFDC program, which is part of the Social Security Act, 42 U.S.C. § 601 *et seq.*, is intended to provide financial assistance to needy children and the parent or parents with whom they live. Maryland has voluntarily entered the AFDC program under which it is partially reimbursed for the welfare assistance it provides and the costs of administration. In return, Maryland must agree to conform its administration of the program to the federal requirements. If it fails to do so, it faces loss of reimbursements and financial sanctions (Stipulations, Paper No. 5, ¶¶ 1–5, 16).

To determine family need under AFDC, the State takes into account the income of any child or relative claiming the benefits. Before October 1984, a parent filing for AFDC benefits could choose to exclude from the so-called "assistance unit" a dependent child or children receiving income from another source and thereby have that income excluded from the income pool comprising the so-called "assistance unit." Thus, that child, generally a half-sibling of the other children in the family, would not be a beneficiary of AFDC benefits, and income to that child would not be counted in determining AFDC eligibility and grant amounts for the rest of the family (*id.* at ¶¶ 6, 9).[1]

Congress approved the Deficit Reduction Act of 1984 (DEFRA) on July 18, 1984, making substantial changes in the AFDC program. On October 1, 1984, HHS implemented the new law through regulations, 45 C.F.R. § 206.10(a)(1)(vii)(B), requiring that children living with a parent or relative applying for or receiving AFDC must be included in the assistance unit and their income must be counted in determining the

---

**1.** The income usually received by the excluded children comes in the form of Social Security Child's Insurance Benefits (42 U.S.C. §§ 402(d); 416(e)) which are for the minor child of a deceased, disabled or retired parent eligible for Social Security payments; or child support payments from an absent parent. By law, Social Security payments must be used for the benefit of the beneficiary, 42 U.S.C. § 408(e). The Social Security Act, 42 U.S.C. § 651, also provides that Congress is to approve funding to enforce the child support obligations of absent parents. In addition, 42 U.S.C. § 602(a)(26) provides that an AFDC applicant or recipient must assign to the state rights to child support payments on behalf of the child, and pursuant to 42 U.S.C. § 657(b)(1) the state must repay to the AFDC family the first $50 of child support payments. Maryland has also implemented this practice (Stipulations, at ¶¶ 26–36).

family's eligibility for benefits (*id.* at ¶¶ 10, 14). Maryland adopted conforming regulations on June 7, 1985 (*id.* at ¶ 20).

The three named plaintiffs in this case have the following histories: October Britt is 45 and lives in Baltimore City with three children, ages 14 through 16. While receiving $256 per month in AFDC benefits for herself and one child, she also received $394 in Social Security Child's Insurance benefits for two of her minors whose father is dead. That payment was increased to $406 in January, 1986. Under the change in the AFDC assistance formula, she must include the money paid to these two children in her so-called "assistance unit." Because the amount these two children receive exceeds the State's $395 maximum outside income for four persons, she has been terminated from the AFDC program. Thus, instead of the $662 she would have received under the old AFDC formula, she will now receive only $406 from Social Security because of her ineligibility for AFDC. She is also no longer eligible for medical assistance (Stipulations at ¶¶ 39–51). Ms. Britt had received $232 in food stamps for everyone in her home, which also includes two unemployed adult sons and an adult daughter and grandchild, the latter two of whom receive their own AFDC, for a total, with past Social Security and AFDC money, of $894. Although her food stamp payments have increased to $319, the loss of AFDC assistance leaves her family with a monthly total of $725 (M–86–604, Paper No. 3, Exh. A, Britt Affidavit).

Mary Jacobs is 26 and lives in Baltimore City with her three children, ages 12 months through 7 years. She has received AFDC benefits of $256 per month for her and one child. She also receives $250 per month in child support from the father of her other two children for a total of $506 in family income. The child support payments must be assigned to the State and counted toward her assistance unit under the new regulations at issue here. Her recalculated AFDC monthly benefit will be $395. She also receives $241 in food stamps each month. Further, the father of

her two children has informed her he will no longer make child support payments unless they are used directly to support his children (Stipulations at ¶¶ 52–62).

Dorothy Oldaker is 31 and lives in Baltimore City with her two children, ages 5 and 12. She has received AFDC benefits for herself and one child. She received $240 (raised to $248 in January) in Social Security benefits for her other child on account of the child's disabled father. She must now include these payments as part of her assistance unit outside income reducing what would have been a total combined monthly income of $504 to $329. She received $207 in food stamps in March, an increase from the $191 she got in food stamps before her second child was placed on AFDC (*id.* at ¶¶ 63–73, Paper No. 3, Exh. A., Oldaker Affidavit at ¶ 12).

### Assertions of Parties

The individual and class plaintiffs assert the challenged changes in AFDC regulations are invalid because 1) the Social Security Act, 42 U.S.C. § 602(a)(38), requires that only those children who may be considered dependents under § 606(a) of the Act may be included in the assistance unit; 2) the new regulations force parents to violate their fiduciary duties to the children for whom they accept benefits under 42 U.S.C. §§ 405(j) and 408(e) and 20 C.F.R. § 404.2035; 3) the federal defendants' regulations as they impact child support payments violate the Tenth Amendment; and 4) the regulations force a parent to use income earmarked for one child to support others "effectively resulting in a taking of property without due process." (M–86–604, Paper No. 3 at 2–3).

The federal defendants assert that the plaintiffs have failed to establish that the Secretary's regulations violate either the Social Security Act or the Constitution (M–86–605, Paper No. 14 at 3).

The State plaintiffs have not moved for a preliminary injunction but urge the court to grant the individual and class plaintiffs' motion to prevent Maryland from being

forced to continue to adhere to a regulation change it considers illegal. The State also asserts that the change in the AFDC assistance unit formula requires the State to "disrupt and undermine its own orderly (child support) scheme...." (M–86–605, Paper No. 10 at 2). "Support orders and the state statutes on which they are based contemplate that support awards are to be fixed in relationship to the ascertained needs of the child on whose behalf they are paid, not his siblings." (*Id.* at 2–3).

## Legal Analysis

That the individual plaintiffs will be irreparably harmed by the continued enforcement of the new AFDC regulations under challenge is not open to serious dispute.

Stripped of detail, the stipulated facts indicate Ms. Britt's family has lost $256 per month under the new regulations; Ms. Jacobs has lost $110 per month; and Ms. Oldaker has lost $175 per month.

The federal defendants contend that these plaintiffs are not receiving "any less income than any other family of the same size receiving AFDC benefits" under the new formula (M–86–605, Paper No. 14 at 10). They further assert that the change in AFDC formula does not bring these families below the public assistance levels established by Maryland—$395 per month for a family of four and $329 per month for a family of three.[2]

Despite the quibbling of the parties over the impact of the loss of funds on these plaintiffs, the parties have stipulated that the families of all three individual plaintiffs do not have sufficient funds to pay for the necessities of life (Paper No. 5, Stipulations, ¶¶ 50, 62, 73). To be without basic necessities of life, and without any hope of being able to improve one's economic situa-

tion sufficiently to attain them, is to be irreparably harmed. These families, already in the economic cellar, are pushed further down by this additional reduction in aid.

The essence of the present dispute is not whether the individual and class plaintiffs have been harmed, however, but whether HHS has acted properly in issuing the challenged regulations. One major issue in this case is the intended relationship between the composition of the AFDC assistance unit as altered by DEFRA and pre-existing Social Security Act provisions which ensure that certain payments reach designated beneficiaries. Another major point of contention is the intended relationship between the DEFRA changes in AFDC and state child support laws. A determination of Congressional intent in adopting relevant sections of DEFRA is necessary.

The purpose of 42 U.S.C. § 601 is to provide care of "needy dependent children" and the parents or relatives with whom they live. "Dependent child" is defined as a "needy child" in 42 U.S.C. § 606(1) "who has been deprived of parental support or care by reason of the death, continued absence from the home ... or physical or mental incapacity of a parent, and who is living with (a parent or relative)...."

Income actually available to the family has always been calculated as part of the AFDC assistance unit. 42 U.S.C. § 602(a)(7)(A). Other funds, such as Social Security or child support for one or more children in the home, were previously able to be omitted, if so desired, as has already been stated.

In Section 2640 of the Deficit Reduction Act of 1984, Pub.L. No. 98–369, 98 Stat. 1145 (1984), Congress enacted 42 U.S.C. § 602(a)(38) which provides:

---

**2.** The federal defendants say the Maryland assistance level—or maximum AFDC grant—for a family of four is $359 (M–86–605, Paper No. —— at 10). That is a typographical error. *See id.* at Exh. D. Elsewhere in these pleadings and in the stipulations of the parties, the standard of family need varies. (*See* M–86–605, Paper No. 5, Stipulations of Fact, ¶¶ 77–79). The Maryland Department of Human Resources is re-

quired to update its proposed standard of need each year but apparently cannot afford to pay its welfare families the amount needed to meet those standards (M–86–605, Paper No. 12 at 5 n. 4). The proposed standard of need for the current fiscal year is $680 for a Maryland family of three and $810 for a family of four (M–86–605, Paper No. 5, Stipulations of Fact, ¶ 79).

"(a) A state plan for aid ... to needy families with children must

(38) provide that in making the determination under paragraph (7) with respect to a dependent child and applying paragraph (8), the State agency shall (except as otherwise provided in this part) include

(A) any parent of such child, and

(B) any brother or sister of such child, if such brother or sister meets the conditions described in clauses (1) and (2) of section 606(a) of this title, if such parent, brother, or sister is living in the same home as the dependent child, and any income of or available for such parent, brother, or sister shall be included in making such determination and applying such paragraph with respect to the family (notwithstanding section 405(j) of this title, in the case of benefits provided under subchapter II of this chapter); ...."

The Secretary of HHS promulgated regulations to implement 42 U.S.C. § 602(a)(38). *See* 49 Fed.Reg. 35586 (Sept. 10, 1984). They state that in order for a family to be eligible for AFDC "an application with respect to a dependent child must also include, if living in the same household and otherwise eligible for assistance: (A) Any natural or adoptive parent or stepparent ... and (B) any blood-related or adoptive brother or sister." 49 Fed.Reg. at 35599; codified at 45 C.F.R. § 206.-10(a)(1)(vii).

Under Title II of the Social Security Act, 42 U.S.C. § 402(d), the child of a dead, disabled or retired wage earner is entitled to benefits. These benefits are to be used for the beneficiary, 42 U.S.C. § 405(j)(1), and failure to do so through knowing conversion is a felony, 42 U.S.C. § 408(e), (h). Under Maryland law, a parent is responsible only for the support of his or her own minor children. *Dorsey v. State Depart-*

*ment of Social Services*, 266 Md. 162, 167, 292 A.2d 60, 62 (1972).

The plaintiffs' reasoning is two-tiered. First, they contend that the Secretary, in promulgating the regulations at issue here, has ignored the plain language of 42 U.S.C. § 602(a)(38) by requiring to be included in the assistance unit all blood or adopted siblings, regardless of whether they are *needy* dependents. If that were the intent of Congress, they say, then all references to the definitions of "dependent child" in § 606(a) could have been eliminated, and Congress could have broadly applied the statute to all siblings (M–86–604, Paper No. 3 at 28). Implicit in this argument, and explicitly stated by the plaintiffs elsewhere, is that their children receiving Social Security aid and child support are not needy or dependent, because they are able to be supported by this aid rather than AFDC benefits (*id.* at 29).

By mistakenly including children receiving these benefits in the regulations, the Secretary, according to the plaintiffs, has ignored the mandate of 42 U.S.C. § 405(j) requiring use of Social Security payments for the intended beneficiary. The Secretary is also disregarding the mandated use in Maryland of court-ordered child support awards, they argue.

The federal defendants' counter-argument is that the children at issue here *must* be needy and dependent; otherwise they would not qualify for Title II or child support money in the first place (M–86–605, Paper No. 14 at 21). Further, they assert that in analyzing the language of § 602(a)(38) there is no requirement that the children added to the assistance unit be individually needy. "The language of paragraph (38) refers to *clauses* (1) and (2) of 42 U.S.C. § 606(a). These clauses do not themselves include the word 'needy.'" (*Id.* at 21).[3] The federal defendants also per-

---

**3.** § 606. Definitions

When used in this part—

(a) The term "dependent child" means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home (other than

absence occasioned solely by reason of the performance of active duty in the uniformed services of the United States), or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, step-

suasively argue that Congress in § 2640 of DEFRA enacted 42 U.S.C. § 602(a)(38) to mandate the persons who were to be included in the family assistance unit for the purposes of the need determination to be made under 42 U.S.C. § 602(a)(7) and that the interpretation of the statute urged by plaintiffs would render § 602(a)(38) meaningless by requiring a need determination *before* the composition of the assistance unit is known. If children receiving benefits from other sources, including court-ordered child support, were not intended to be included in the assistance formula, then Congress had no reason to enact what became § 602(a)(38) into law, the defendants conclude (*id.* at 21–23).

■ The Supreme Court has long held that the interpretation of an agency in construing a law it is charged to administer is entitled to substantial deference. *Chevron, U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Blum v. Bacon,* 457 U.S. 132, 141–42, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982). If the interpretation of the secretary of an agency is reasonable, the courts must respect it. *Udall v. Tallman,* 380 U.S. 1, 4, 85 S.Ct. 792, 795, 13 L.Ed.2d 616 (1965).

This is not to say that the courts have absolutely no role in this process. In the *Chevron* decision, the Court examined the process of judicial review of agency construction:

> "First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."

104 S.Ct. at 2781. The Court emphasized, however, that the judiciary, as final authority, "must reject administrative construc-

tions which are contrary to clear congressional intent." *Id.* 104 S.Ct. at 2782, n. 9.

Several district courts around the country have examined the same or similar issues to those presented here. In the context of determining whether to issue preliminary injunctions, four courts to date have concluded that there is at least a fair likelihood that the Secretary's regulation challenged here is invalid and an incorrect interpretation of the statute. *Frazier v. Pingree,* 612 F. Supp. 345 (M.D.Fla.1985); *Gorrie v. Heckler,* 606 F.Supp. 368 (D.Minn.), 624 F.Supp. 85 (D.Minn.1985); *White Horse v. Heckler,* 627 F.Supp. 848 (D.S.D.1985); and *Gibson v. Sallee,* 648 F.Supp. 54, No. 3–85–1283 (M.D.Tenn. March 6, 1986). At least eight courts have concluded the Secretary's interpretation of the statute is correct. *Creaton v. Heckler,* 625 F.Supp. 26 (C.D.Cal.1985); *Ardister v. Mansour,* 627 F.Supp. 641 (W.D.Mich. 1986); *Oliver v. Ledbetter,* 624 F.Supp. 325 (N.D.Ga.1985); *Childress v. Heckler,* No. 85–Z–1459 (D.Colo. Jan. 13, 1986); *Huber v. Blinzinger,* 626 F.Supp. 30 (N.D.Ind.1985); *Sherrod v. Hegstrom,* 629 F.Supp. 150 (D.Ore.1985); *Shonkwiler v. Heckler,* 628 F.Supp. 1013 (S.D.Ind.1985); *Van Horn v. Hegstrom,* No. 85–1768–RE (D.Ore. Feb. 19, 1986) [Available on WESTLAW, DCTU database]. In *Johnson v. Cohen,* No. 84–6277 (E.D.Pa. Jan. 10, 1986 and Oct. 2, 1985) [Available on WESTLAW, DCTU database], the court apparently concluded the Secretary's interpretation of the statute was correct but ruled that due process required a pre-deprivation hearing before the government could require the inclusion of court-ordered payments to one child in the AFDC assistance unit.

In determining that the injunction should issue in a case concerning the inclusion of Title II funds in the AFDC assistance unit, the court in *Frazier v. Pingree,* 612 F.Supp. at 345, 347–48, concluded that Congress did not clearly indicate an intention

---

brother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) at the option of the State, under the age of nineteen and a full-time stu-

dent in a secondary school (or in the equivalent level of vocational or technical training), if, before he attains age nineteen, he may reasonably be expected to complete the program of such secondary school (or such training).

to alter existing provisions of Title II requiring that those benefits be used *"only on behalf of the minor beneficiary."* 612 F.Supp. at 347. As a result, the court concluded the regulations should not have been promulgated as written, and the plaintiffs would thus be likely to succeed on the merits. The *Frazier* court, however, in reaching its conclusion seems to have ignored the admitted fact that the Social Security Act, as it existed before DEFRA, allowed Title II payments and other outside income to be attributed to the family assistance unit when the parent elected to do so. The change effected by DEFRA, then, merely makes the attribution mandatory rather than optional.

This court concludes, albeit reluctantly, that Congress did evidence an intent, although not as clearly by its statutory language as might have been done, to have both Title II and child support recipients included as part of the assistance unit. This intent is indirectly hinted at in the statutory language. As noted by the court in *Oliver v. Ledbetter,* 624 F.Supp. at 330, § 2640 of DEFRA "specifically states that all co-resident siblings who receive Title II benefits are to be included in the assistance unit *'notwithstanding'* the provisions of 42 U.S.C. § 405(j)." The *Oliver* court stated, and this court agrees, that the specific mention of the possible conflict between the provisions of § 2640 and of 42 U.S.C. § 405(j) is indication that Congress recognized it existed and wanted to resolve it in favor of the new statutory scheme. *Id.*

■ When doubt exists about the clarity of the language of a statute, courts must look to the legislative history. *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). Thus, the following explanation of the new statute is instructive:

"Aid to Families With Dependent Children (AFDC) Provisions

1. Parents and Siblings of Dependent Child Included in AFDC Family (sec. 971 of the bill) (Contained in S. 2062 as originally reported)

*Present Law*

There is no requirement in present law that parents and all siblings be included in the AFDC filing unit. Families applying for assistance may exclude from the filing unit certain family members who have income which might reduce the family benefit. For example, a family might choose to exclude a child who is receiving social security or child support payments, if the payments would reduce the family's benefits by an amount greater than the amount payable on behalf of the child....

*Explanation of Provision*

The provision approved by the Committee would require States to include in the filing unit the parents and all dependent minor siblings (except SSI recipients and any stepbrothers and stepsisters) living with a child who applies for or receives AFDC....

This change will end the present practice whereby families exclude members with income in order to maximize family benefits, and will ensure that the income of family members who live together and share expenses is recognized and counted as available to the family as a whole. A similar provision was approved by the Committee last year, but was dropped in conference with the House."

S.Rep. No. 98–169, Senate Comm. on Finance, 98th Cong., 2d Session, Deficit Reduction Act of 1984, Explanation of Provisions Approved by Committee on March 21, 1984, Vol. 1 at 980.

Congress estimated the federal treasury would save some $455 million in four years under the new law. *Id.* at 981. The serious problem of the ballooning federal deficit is well known. Congress faces the difficult and unenviable task of attempting to control runaway federal spending. To help in achieving that end, it has decided to require the pooling of available resources to determine the income of the assistance unit. Congress, in making difficult choices in the allocation of scarce funds among competing interests, has decided to reduce

its AFDC commitment to family units which have available to them Title II, child support, and other outside income. This action is rationally related to the achievement of its goal. *Califano v. Aznavorian,* 439 U.S. 170, 174, 99 S.Ct. 471, 473, 58 L.Ed.2d 435 (1978).

The plaintiffs have asserted that the Secretary has misinterpreted the law and promulgated regulations which are far too broad. But, as noted by the Court in the *Ardister* decision, given Congress' express purpose to add formerly omitted payments to the assistance unit pool, § 602(a)(38) *must* mean that the Secretary is now empowered to do that. To adhere to the plaintiffs' narrow interpretation of the statute would be to prevent these sources of funds from entering the assistance unit pool. That would ignore the language of Congress (*see Ardister v. Mansour,* 627 F.Supp. 641, 648), and render meaningless its intent.

The plaintiffs also assert that child support payments are within the purview of the State and that the federal defendants undermine the State's power in that area by forcing their inclusion in the assistance unit formula (M–86–604, Paper No. 3 at 46). The plaintiffs cite two cases, *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979), and *McCarty v. McCarty,* 453 U.S. 210, 220, 101 S.Ct. 2728, 2735, 69 L.Ed.2d 589 (1981), for the proposition that for the federal government to intrude into state domestic relations matters, a two-part test must be met. The first part is that Congress must have " 'positively required by direct enactment' that state law be pre-empted." *Hisquierdo,* 439 U.S. at 581, 99 S.Ct. at 808. Second, the state law will not be overridden unless it does "major damage" to "clear and substantial federal interests." *McCarty,* 453 U.S. at 220, 101 S.Ct. at 2735.

The Supreme Court recently in *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 1028, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), drastically reduced what few limits existed on the Commerce Clause powers impacting on state sovereignty. "State sovereign interests, then, are more properly protected by procedural safeguards inherent in the structure of the federal system than by judicially created limitations on federal power." 469 U.S. 549, 105 S.Ct. at 1016. Thus, absent a congressional action which is "destructive of state sovereignty or violative of any constitutional provision," it will be upheld. 469 U.S. 550, 105 S.Ct. at 1017.

Here, the Congress has not abolished the Maryland child support system. It has not interfered with the State court's power to make child support awards. Nor has it affected the power of the Maryland legislature to enact statutes to enforce the payment of awards. The statute and regulations at issue here merely state that to the extent a parent is receiving child support the State must consider the child support in determining eligibility of the family unit for AFDC benefits.

In determining that the Secretary of HHS could not promulgate regulations mandating the inclusion of child support payments in the assistance formula, Judge Lord in *Gorrie v. Heckler,* 606 F.Supp. at 373, said to do so would make "meaningless the decrees of the state courts determining the amount of aid."

This court cannot agree. It is not the child support payments which will be reduced under the regulations, but the additional AFDC assistance.[4]

Moreover, as noted by the court in *Shonkwiler v. Heckler,* 628 F.Supp. 1013, 1018, Congress apparently concluded that families living together generally do not segregate expenses and costs, but share them. This is a legislative judgment of the type which Congress is allowed to make in establishing the requirements of eligibility for social welfare benefits so long as the decision is rational and does not result in invidious discrimination. *Weinberger v.*

---

**4.** The court in *Gibson v. Sallee,* 648 F.Supp. 54, at 57–58, No. 3–85–1283, concluded plaintiffs had a likelihood of succeeding on the merits on the child support issue. The court did not provide an analysis of the issue, however.

**1026**

*Salfi,* 422 U.S. 749, 767–85, 95 S.Ct. 2457, 2465–76, 45 L.Ed.2d 522 (1975); *Schweiker v. Gray Panthers,* 453 U.S. 34, 47–48, 101 S.Ct. 2633, 2642, 69 L.Ed.2d 460 (1981); *Brown v. Heckler* 589 F.Supp. 985 (E.D.Pa. 1984), *affirmed* mem. dec., 760 F.2d 255 (3d Cir.1985).

The court in *Johnson v. Cohen,* No. 84–6277, slip op. at 37–42, held that Congress intended to include child support payments in the assistance unit under the new Act. The court determined, however, that the plaintiffs had a Fifth Amendment property interest in child support payments and therefore in the interests of due process were entitled to a hearing before being deprived of them, *citing Mathews v. Eldridge,* 424 U.S. 319, 344, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976), and *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

On the other hand, the *Ardister* court determined that the plaintiffs were not denied due process by the Congressional "reallocation of AFDC benefits." *Ardister,* 627 F.Supp. 641, 645, *citing United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980). The analysis of the undersigned coincides with the apparent analysis of Judge Enslen in *Ardister.* Congress has not taken away child support benefits. It has instead reduced the amount of AFDC assistance given to those families which include children receiving child support payments. The plaintiffs are thus not entitled to a *Goldberg* hearing. *Weinberg v. Salfi, supra.*

For all these reasons, the court concludes that this attack by the individual and class plaintiffs and by the officials of the Maryland Department of Human Resources on § 2640 of DEFRA and on 45 C.F.R. § 206.10(a)(1)(vii), the implementing Federal regulation, is without legal merit.

The motions for preliminary and permanent injunctions will be DENIED.

The individual and class plaintiffs' motion to proceed *in forma pauperis* is GRANTED.

Judgment will be entered for the defendants in Civil Action No. M–86–604 and for the federal defendants in Civil Action No. M–86–605.