**Carl F. ROGHAN, Plaintiff,**

v.

**John R. BLOCK, et al., Defendants.**

**No. G84–567 CA.**

United States District Court,
W.D. Michigan, S.D.

June 22, 1984.

Paul B. Newman, Newaygo, Mich., for plaintiff.

Edith Landman, Asst. U.S. Atty., Grand Rapids, Mich., for defendants.

BENJAMIN F. GIBSON, District Judge.

### OPINION

This matter arises out of the acceleration and foreclosure of certain recreation and operating loans issued to the plaintiff by the Farmers Home Administration under the Consolidated Farm and Rural Development Act, 7 U.S.C. §§ 1921–92. The plaintiff was notified of the decision to accelerate his loans on June 1, 1982. Pursuant to

notice, a foreclosure sale was held on March 10, 1983, at which time the FmHA purchased the real estate which had secured the loans. On March 10, 1984, the plaintiff's statutory period of redemption expired with no action having been taken by him. The FmHA took possession of the chattels which had secured the loans on May 22, 1984. The plaintiff alleges that his fifth amendment right to procedural due process was violated by the FmHA's failure to notify him of the moratorium relief available under 7 U.S.C. § 1981a.[1]

■ The plaintiff has filed a motion seeking to preliminarily enjoin the FmHA from denying him the § 1981a relief "without first providing him with administrative due process ...," and from denying him the use of the chattels removed from the property. The plaintiff seeks this relief in his own right, but at the hearing on his motion for a preliminary injunction he contended that he fell within the definition of the class certified in *Rutan v. Block*, No. G83–19 CA, and therefore also would be entitled to the protection of the injunction issued in that case.[2]

By stipulation of the parties, the class certified in *Rutan* is, with certain exceptions, composed of

All farmers in the State of Michigan who presently have farm ownership, operating, or emergency loans financed by the Farmers Home Administration under the Consolidated Farm and Rural Development Act and whose loan accounts are delinquent or have been accelerated or which may hereafter be accelerated by the Farmers Home Administration and made subject to foreclosure ....

*Rutan v. Block*, No. G83–19 CA (W.D. Mich. January 16, 1984). This language convinces the Court that the instant plaintiff is not a member of the class.

As noted above, the plaintiff's loans were accelerated, foreclosed upon, and the security for them sold at auction by March 10, 1983, ten months before the class was certified. By the *Rutan* stipulation the FmHA agreed "not to foreclose upon any class members until [the] Court has heard the merits of the case." Inasmuch as the parties in *Rutan* did not agree expressly to include persons whose loans had already been foreclosed upon, and in light of the fact that that action had been brought to *prevent* foreclosures until the FmHA promulgates appropriate regulations,[3] the

1. This section states in relevant part:
   § 1981a. *Loan moratorium and policy on foreclosures*
   In addition to any other authority that the Secretary may have to defer principal and interest and forego foreclosure, the Secretary may permit, at the request of the borrower, the deferral of principal and interest on any outstanding loan made, insured, or held by the Secretary under this chapter, or under the provisions of any other law administered by the Farmers Home Administration, and may forego foreclosure of any such loan, for such period as the Secretary deems necessary upon a showing by the borrower that due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making payments of such principal and interest when due without unduly impairing the standard of living of the borrower.

2. In *Rutan*, the named plaintiffs seek to have the FmHA promulgate regulations to implement § 1981a. On November 29, 1983, the FmHA was preliminarily enjoined from
   (a) Accelerating the indebtedness of the plaintiffs;

   (b) Foreclosing on the real property or chattels of the plaintiffs;
   (c) Demanding voluntary conveyance by the plaintiffs;
   (d) Repossessing chattels of the plaintiffs or in any way proceeding against or depriving the plaintiffs of property in which the defendants have a security interest;
   (e) Withholding from the plaintiffs the living and operating expenses previously determined.
   This injunction was extended to the class on January 16, 1984. *See also Coleman v. Block*, 562 F.Supp. 1353 (D.N.D.1983), *national class certified*, 580 F.Supp. 192 (D.N.D.1983), *permanent injunction granted*, 580 F.Supp. 194 (D.N.D. 1984).

3. The first paragraph of the complaint in *Rutan* stated in relevant part (emphasis added):
   This is a class action for declaratory and injunctive relief to enjoin defendants from foreclosing on farm operating, ownership, and emergency loans, financed under the Consolidated Farm and Rural Development Act, P.L. 87–128, without first providing the borrowers with personal notice of and oppor-

Court is of the opinion that the class was not intended to include persons whose loans had already been foreclosed upon.

■ The plaintiff still seeks a preliminary injunction based on the merits of his own case. The standards for determining whether a preliminary injunction should issue can be found in *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 530 n. 1, 537–38 (6th Cir.1978):

1) whether the issues raised are "fair ground for litigation,"

2) whether the plaintiff would suffer irreparable injury if the injunction does not issue,

3) whether there would be overriding harm to the plaintiff relative to the defendant,

4) whether the public interest would be furthered by the issuance of an injunction.

The first element has also been expressed as the more strict requirement of whether the plaintiff has shown "a strong or substantial likelihood or probability of success on their merits." *Mason Co. Medical Assn. v. Knebel*, 563 F.2d 256 (6th Cir.1977). The *Roth* court reconciled *Mason Co.* by pointing out that the factors should be balanced. 583 F.2d at 537–38. The Sixth Circuit more recently has stated: "Despite the overall flexibility of the test for preliminary injunctive relief, and the discretion vested in the district court, equity has traditionally required [a showing of] irreparable harm before an interlocutory injunction may be issued." *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 103 (6th Cir.1982).

The Court realizes that, since land is considered to be unique, its loss or threatened loss is considered to be irreparable injury. *See, e.g., United Church of the Medical Center v. Medical Center Commission*, 689 F.2d 693, 701 (7th Cir.1982).

However, when all of the above factors are considered together, the Court is of the opinion that an injunction should not be issued in this matter.

The Court is of the opinion that the third and fourth factors strongly militate against the issuance of an injunction. The Court is mindful of the fact that this case does not present the situation, as did *Rutan*, where a person is trying to prevent a threatened acceleration and/or foreclosure. As noted above, the acceleration, foreclosure, sale, and expiration of the redemption period all had occurred before this action was filed on June 6, 1984. It also is important to note that the record before the Court shows that the plaintiff took no action to prevent any of these events from occurring, even though he had adequate notice, apparently understood the nature of the proceedings, and was given several opportunities to appeal administratively.[4] *See* FmHA exhibits 15–17, appended to the defendants' motion to dismiss. Inasmuch as the plaintiff allowed the FmHA to complete the foreclosure proceedings, purchase the land and take possession of the chattels, there would not be overriding harm to the plaintiff relative to the defendants if the injunction does not issue.

For much the same reason, the Court is of the opinion that the public interest would not be furthered by an injunction being issued. Pursuant to Michigan's foreclosure proceedures, title has passed to the FmHA. The plaintiff did not challenge those proceedings nor does he challenge the constitutionality of the procedures. If an injunction is issued under these circumstances it will place in jeopardy title to the property which passed to the FmHA, at least in part, because of the plaintiff's inaction.

■ The issuance of a preliminary injunction is an extraordinary remedy and

---

tunity to apply for deferral or other loan servicing relief *before any acceleration action is begun* . . . .

**4.** The plaintiff does not appear to be challenging the constitutionality of Michigan's non-judicial

foreclosure proceedings, M.C.L.A. §§ 600.-3101–.3280, but the fact that the FmHA failed to advise him of his § 1981a rights before instituting those proceedings. *Cf Ricker v. United States*, 417 F.Supp. 133 (D.Me.1976).

should be granted sparingly. *Cox Cable Communications, Inc. v. Simpson,* 569 F.Supp. 507, 516 (D.Neb.1983). As the Sixth Circuit has stated: "There is no power the exercise of which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing of an injunction ...." *Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union,* 471 F.2d 872, 876 (6th Cir.1972). In seeking an injunction, the plaintiff has asked the Court to exercise its equitable powers. The plaintiff took no action for over two years and now asks this Court to set aside a completed legal proceeding. This the Court shall not do without good reason being shown. In the instant case, no good reason for setting aside the foreclosure has been shown. The motion for preliminary injunction therefore is denied.