Hattie **ARDISTER**, for herself, Mildred Taylor, for herself and her children, Susie Maxwell, for herself, and Pamala Read, for herself and her children and on behalf of a class of similarly situated individuals, Plaintiffs,

v.

Agnes Mary **MANSOUR**, Director of the Michigan Department of Social Services, and the Michigan Department of Social Services, Defendants and Third-Party Plaintiffs,

and

Secretary, United States Department of Health & Human Services, Third-Party Defendant.

No. G85–1163.

United States District Court, W.D. Michigan, S.D.

Jan. 30, 1986.

M. Ann Miller, Lansing, Mich., Jacqueline Doig, Midland, Mich., Thomas Carey, Inkster, Mich., Susan McParland and Kathleen Gmeiner, Detroit, Mich., for plaintiffs.

Frank J. Kelley, Atty. Gen. by Janis Meija, Asst. Atty. Gen., Lansing, Mich., John A. Smietanka, U.S. Atty. by Daniel M. LaVille, Asst. U.S. Atty., Grand Rapids, Mich., for defendants and third-party plaintiffs.

## OPINION

ENSLEN, District Judge.

This opinion is intended to supplant the oral opinion delivered from the bench after oral argument at the December 27, 1985 hearing. This case was originally brought by four named plaintiffs, as heads of their respective households, to secure rights guaranteed to child beneficiaries under Title II of the Social Security Act and to their families under the Aid to Families with Dependent Children (AFDC) and Michigan General Assistance (GA) programs. The December 27th hearing was the second time that this matter had come before the court. On November 30, 1985, I granted a temporary restraining order (TRO) preventing the Michigan Department of Social Services (DSS) from implementing a policy of including the income of minor children derived from Old Age, Survivors, and Disability Insurance (OASDI or Title II) benefits, 42 U.S.C. § 402(d), in the income theoretically available to the household for purposes of determining GA eligibility. Plaintiffs did not request a TRO on the AFDC issue at that time. Also on November 30, I conditionally certified a class of all other similarly situated individuals in the State of Michigan for the purposes of this litigation. The December 27th hearing was on plaintiffs' motion for a preliminary injunction on the AFDC issue, the parties having stipulated that the DSS policy regarding GA eligibility will not be implemented during the pendency of this suit.

In essence, the AFDC question turns on the congressional intent behind § 2640(a) of the Deficit Reduction Act of 1984 (DEFRA), codified at 42 U.S.C. § 602(a)(38), and the validity of the Department of Health and Human Services' (HHS) implementing regulations, found at 45 C.F.R. § 206.10. These provisions both deal with mandatory State filing unit requirements for AFDC eligibility. AFDC is a cooperative federal-state program pursuant to which matching grants are made to the states to enable them to furnish financial assistance and services to needy dependent children and the households in which they live. *See* Title IV–A of the Social Security Act, 42 U.S.C. § 601 *et seq.; King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). While the State administers the program, its plan must be in conformity with federal statutes and implementing regulations. 42 U.S.C. §§ 602–603; 45 C.F.R. § 201 *et seq.* Therefore, when the DEFRA amendments to the

AFDC program took effect in October 1984, the state's only options were to conform its administrative plan to the amendments or to forego its federal funding.

Section 602(a)(38) provides that for purposes of AFDC:

A State plan for aid and services to needy families with children must—

. . . .

(38) provide that in making the determination under paragraph (7) with respect to a dependent child and applying paragraph (8), the State agency shall (except as otherwise provided in this part) include—

. . . .

(B) any brother or sister of such child, if such brother or sister meets the conditions described in clauses (1) and (2) of section 606(a) of this title, if such parent, brother, or sister is living in the same house as the dependent child, and any income of, or available for such parent, brother, or sister shall be included in making such determination and applying such paragraph with respect to the family (*notwithstanding section 405(j) of this title, in the case of benefits provided under subchapter II of this chapter*) [emphasis added].

HHS' interim final regulation, purportedly implementing § 602(a)(38), provides in pertinent part:

(a) *State plan requirements.* A State plan under title I, IV–A, X, or XIV(AABD), of that Social Security Act shall provide that:

(1) Each individual wishing to do so shall have the opportunity to apply for assistance under the plan without delay. Under this requirement:

. . . .

(vii) For AFDC only, in order for the family to be eligible, an application with respect to a dependent child must also include, if living in the same household and otherwise eligible for assistance:

. . . .

(B) Any blood-related or adoptive brother or sister.

45 C.F.R. § 206.10(a)(1)(vii)(B).

Plaintiffs argue that the reference to § 405(j) in § 602(a)(38) is ambiguous because § 405(j) is the representative payee provision for OASDI. Further, they argue that the effect of the HHS' regulation wrongfully deprives Title II benefit recipients to their entitlements by presuming for AFDC purposes that such benefits are available for the use of the entire household. Plaintiffs cite *Mathews v. Lucas*, 427 U.S. 495, 507, 96 S.Ct. 2755, 2763, 49 L.Ed.2d 651 (1976), and *Snider v. Creasy*, 728 F.2d 369 (6th Cir.1984), for the proposition that children's OASDI benefits are intended to replace the support lost by the child when an income-earning parent dies. At least in the past, such payments have been for the sole purpose of providing for the current maintenance of the child beneficiary. 20 C.F.R. § 2040. Any portion of the benefit payments which is not exhausted by current maintenance expenses is to be conserved and/or invested on behalf of the beneficiary. 20 C.F.R. § 2045. Knowing and willful conversion of these payments by the representative payee to the use of someone other than the intended minor beneficiary is punishable as a felony. 42 U.S.C. § 408(e).

It is the well-established rule in the Sixth Circuit that a district court must consider the following four elements in deciding to issue or withhold a preliminary injunction:

1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.

2. Whether the movant has shown irreparable injury.

3. Whether the preliminary injunction could harm third parties.

4. Whether the public interest would be served by issuing the preliminary injunction.

*Mason County Medical Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir.1977). The appellate court has recently reaffirmed that the *Mason County* criteria do not constitute a "rigid and comprehensive test for

determining the appropriateness of preliminary injunctive relief, [rather] the four considerations ... are factors to be balanced, not prerequisites that must be met." *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1263 (6th Cir.1985). The emphasis on balancing the four factors in the *Frisch* opinion could suggest that a particularly strong showing of irreparable injury would lessen the moving party's burden of showing a *"substantial* likelihood or probability of success on the merits." Nevertheless, at least one other Circuit has held that a literal showing of likelihood of success is necessary where the preliminary injunction is sought against implementation of a federal statute. *See Union Carbide Agricultural Products Co. v. Costle*, 632 F.2d 1014, 1017–18 (2d Cir.1980).

In the principal case, plaintiffs have made a showing of irreparable injury. The named plaintiffs and members of the class will no doubt either be denied AFDC benefits or have existing aid substantially reduced due to the presence of Title II recipients in the household. By the same token, issuance of a preliminary injunction will doubtless cause some harm to others by virtue of nonuniform application of AFDC eligibility requirements nationwide and diversion of funds otherwise available to other needy applicants. Therefore, the analysis of the remaining two elements of the *Mason County* test—the likelihood of success and the public interest—will determine the outcome of the balance, and hence, whether preliminary injunctive relief should be granted. Resolution of these remaining issues necessarily depends upon the congressional intent behind § 602(a)(38).

Throughout the pendency of this suit, and related cases, I have given a great deal of thought to the question of the apparent incongruities of the relevant DEFRA amendments. Certainly, § 602(a)(38) is not a model of legislative draftsmanship. It is some small solace to me that other federal judges in my position have found the amendments equally perplexing. *Compare Frazier v. Pingree*, 612 F.Supp. 345 (M.D.

Fla.1985); *Gorrie v. Heckler*, 606 F.Supp. 368 (D.Minn.1985) *and White Horse v. Heckler*, 627 F.Supp. 848, (D.S.D.1985) (preliminarily enjoining implementation of HHS' regulation) *with Sherrod v. Hegstrom*, 629 F.Supp. 150 (D.Or.1985); *Creaton v. Heckler*, 625 F.Supp. 26 (C.D.Cal.1985); *Huber v. Blinzinger*, 626 F.Supp. 30 (N.D.Ind.1985) *and Shonkwiler v. Heckler*, 628 F.Supp. 1013 (S.D.Ind.1985) (denying preliminary injunctive relief).

My particular concern about this amendment relates to the unquestionably strong statutory and common law precedent regarding the "untouchability" of a child's Title II benefits, and the backhanded way in which Congress apparently deemed these benefits available to other members of the child's household. Plaintiffs voice these same concerns when they speak of the "ambiguity" of § 602(a)(38). However, setting aside any personal feelings about the propriety or logic of this particular aspect of DEFRA, I conclude that the congressional intent of § 602(a)(38) is sufficiently clear—Congress intended to halt the prior practice of allowing AFDC applicants to exclude OASDI recipients from the household filing unit for AFDC purposes. *See Oliver v. Ledbetter*, 624 F.Supp. 325, 329–330 (N.D.Ga.1985); House Conference Report No. 98–369, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Ad.News 751, 1407. This interpretation of the statute is fully consistent with the HHS' implementing regulation at 45 C.F.R. § 206.10(a)(1)(vii)(B).

I should note that this interpretation of the statute was influenced to some degree by the plaintiffs', and indeed my own, inability to attribute *any* other meaning to the language of § 602(a)(38). If the § 405(j) language of that provision does not mean what the HHS says it means, then I confess that I am at a complete loss to explain its purpose. As a responsible jurist charged with the duty of interpreting congressional enactments, I am loathe to conclude that any provision of the United

States Code is gibberish—if Congress took the time to pass the measure, and the President signed it into law, it *must* mean something. In this particular case, § 602(a)(38) can only mean one thing. Congress, in its wisdom, has decided that in the interests of deficit cutting and social welfare program management, Title II payments to a child beneficiary must be deemed available for the common use of the other members of his or her household unit.

Since I find that the HHS' interpretation is reasonable and consistent with the underlying purpose of DEFRA, that interpretation must be accorded substantial deference. *See Schweiker v. Hogan,* 457 U.S. 569, 583, 102 S.Ct. 2597, 2606, 73 L.Ed.2d 227 (1982); *Blum v. Bacon,* 457 U.S. 132, 141–42, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982). Furthermore, pursuant to a long line of Supreme Court authority, I find that this particular legislation is rationally related to the cognizable goals of dealing with bugetary constraints and responsibly allocating limited social welfare funds. *See, e.g., Califano v. Aznavorian,* 439 U.S. 170, 174, 99 S.Ct. 471, 473, 58 L.Ed.2d 435 (1978); *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). The instant plaintiffs are not denied any due process or equal protection rights by Congress' reallocation of AFDC benefits. *See United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980).

Returning to the remaining two elements of the *Mason County* test, I find that the plaintiffs have not shown a substantial likelihood of success on the merits of their AFDC claim. Moreover, since it is Congress, and not the judiciary, that speaks for the public interest in the area of social welfare programs, I conclude that issuing a preliminary injunction against further implementation of the instant statute and regulation in the State of Michigan would not be in the public interest. Therefore, plaintiffs' motion is denied.