**AMERICANS UNITED FOR SEPARATION OF CHURCH AND STATE, a corporation; Benjamin Baum; Phyllis Ball; Walter Bergman; John Charles Bearden; Gilbert R. Davis; and James T. Weaver, Plaintiffs,**

v.

**CITY OF GRAND RAPIDS, a municipal corporation, Defendant.**

No. 1:90–CV–946.

United States District Court,
W.D. Michigan.

Dec. 21, 1990.

Albert R. Dilley, Grand Rapids, Mich., for plaintiffs.

G. Douglas Walton, Deputy City Atty., Philip A. Balkema, City Atty., Grand Rapids, Mich., for defendant.

Richard G. Leonard, Rhoades, McKee, Boer, Goodrich & Titta, Grand Rapids, Mich., Nathan Lewin, David G. Webbert, Niki Kuckes, David I. Gelfand, Miller, Cassidy, Larroca & Lewin, Washington, D.C., for Chabad House of Western Michigan, Inc.

ENSLEN, District Judge.

## OPINION

This matter is before the Court on plaintiffs' motion for a preliminary injunction. On November 13, 1990, plaintiffs filed their motion, and defendants responded on November 21, 1990. Plaintiffs filed a reply brief on November 30, 1990. The Court heard argument on the motion on December 5, 1990, and because of the imminent approach of the Chanukah season, the Court issued an oral opinion from the bench. The Court stated that it would issue a written opinion, at a later date, allowing the Court to present its thoughts on this matter in a more organized form. What follows is the Court's written opinion, substantially similar to its oral opinion of December 5, 1990, although perhaps a bit more thorough and "polished."

Plaintiffs are an association known as Americans United for Separation of Church and State ("Americans United") and a group of individuals. Their motion seeks to restrain the defendant, the City of Grand Rapids, from issuing a permit for the placement of a Chanukah menorah on Calder Plaza during the upcoming eight-day holiday which begins on the evening of December 11, 1990.[1] Plaintiffs' action is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is conferred on this Court by 28 U.S.C. § 1343(a)(3). Plaintiffs claim that the action of the Grand Rapids government, in permitting the menorah display on Calder Plaza, is an act respecting an establishment of religion in violation of the first amendment to the United States Constitution.

---

1. Plaintiffs' motion for a preliminary injunction seeks to enjoin the placement of a menorah only on Calder Plaza. Plaintiffs' complaint seeks a judgment enjoining the placement of a menorah on Calder Plaza or on *other government-owned property.* Complaint at 5 (emphasis added).

## FACTS

Beginning in 1984, Rabbi Yosef Weingarten, Director of Chabad House of Western Michigan, has annually requested and received permission to erect a twenty foot steel menorah on Calder Plaza for a ten-day period. The application for the permit has a filing fee of $2.50. All costs associated with the display of the menorah are paid for with private funds. The City has no role in the planning, construction, erection, removal or storage of the menorah.

Every year since 1984 there has been a large 2' × 3' visible sign displayed on or immediately adjacent to the menorah. The sign reads:

Happy Chanukah to All

This Menorah display has been erected by Chabad House, a private organization. Its presence does not constitute an endorsement by the City of Grand Rapids of the organization or the display.

Beginning in 1989, two such signs have been posted.

Calder Plaza is located in the heart of the governmental building section of downtown Grand Rapids. It is approximately four and one-half (4½) acres in size and is principally concrete with planting beds on the perimeter containing grass, flowers and trees. Located on Calder Plaza are the City Hall and the County Building for the County of Kent. Immediately adjacent is the Federal Courthouse and across the street is a State of Michigan Building and the Kent County Probate Court Building. On the other side of the plaza is the police station and the District and Circuit Court Building for the City of Grand Rapids and the County of Kent.

On the northeast quadrant of Calder Plaza is a large sculpture by Alexander Calder, for whom the plaza is named. The sculpture is entitled, "La Grande Vitesse," which means "the great swiftness" or "the grand rapids"; this statue is a recognized symbol of the City of Grand Rapids.

The menorah has traditionally been placed in the southeast quadrant of Calder Plaza close to steps leading to the public sidewalk and adjacent to flagpoles displaying the United States, Kent County and City of Grand Rapids flags. Defendant represents, and plaintiff does not dispute, that the menorah is approximately 162' from the County Building and 256' from City Hall. Plaintiff states that the menorah is 50 feet away from Ottawa Avenue, whereas defendant believes it to be about 30 feet. This difference is not important to the matter at hand, and I note that the distance would differ depending upon which lane of traffic a car was traveling in on Ottawa Avenue.

## DISCUSSION

*Preliminary Injunction Standard*

■ In deciding whether to grant or deny a preliminary injunction, the Court must balance four well-known factors. These factors are:

1. Whether the plaintiff has shown a strong or substantial likelihood of success on the merits;

2. Whether the plaintiff has shown irreparable injury;

3. Whether the issuance of a preliminary injunction would cause substantial harm to others; and

4. Whether the public interest would be served by issuing a preliminary injunction.

*Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259, 262 (6th Cir.1988); *Mason County Medical Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir.1977).

■ The purpose of the preliminary injunction is to preserve the status quo pending final determination of the lawsuit. *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981). Preliminary injunctions are addressed to the discretion of the district court. *Synanon Foundation, Inc. v. California*, 444 U.S. 1307, 100 S.Ct. 496, 62 L.Ed.2d 454 (1979). This type of relief is an extraordinary remedy best used sparingly. *Roghan v. Block*, 590 F.Supp. 150 (W.D.Mich.1984), *aff'd*, 790 F.2d 540 (6th Cir.1986).

The Sixth Circuit has cautioned courts that they should not view the four factors

as prerequisites to relief, but rather as factors to be balanced. *In re DeLorean Motor Co.,* 755 F.2d 1223 (6th Cir.1985). Thus, a court can enter a preliminary injunction if it finds that the plaintiff "at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued." *Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100, 105 (6th Cir. 1982). "Where the burden of the injunction would weigh as heavily on the defendant as on the plaintiff [, however], the plaintiff must make a showing of at least a 'strong probability of success on the merits' before a trial court would be justified in issuing the order." *Frisch's Restaurant, Inc. v. Shoney's, Inc.,* 759 F.2d 1261, 1270 (6th Cir.1985). Also, as the strength of showing as to irreparable harm increases, the necessity to show likelihood of success on the merits decreases. *Ardister v. Mansour,* 627 F.Supp. 641, 644 (W.D.Mich. 1986). Yet, in spite of the overall flexibility of the test for preliminary injunctive relief, the Sixth Circuit has stated that the irreparable harm element is to be analyzed carefully. In *Friendship Materials,* the court said:

> Despite the overall flexibility of the test for preliminary injunctive relief, and the discretion vested in the district court, equity has traditionally required [a showing of] irreparable harm before an interlocutory injunction may be issued.

679 F.2d at 103.

*Standing*

■ Before applying the four factors to this case, the Court must address the standing of the plaintiffs to bring this action. Defendant has raised the issue of standing, arguing that plaintiffs do not have standing as taxpayers to object to the presence of the menorah, because no tax money is used to fund its presence. It is clear that no tax funds are expended for the upkeep, maintenance or erection of the menorah, and as such, taxpayer standing is not an option open to plaintiffs. *See, American Civil Liberties Union v. City of St. Charles,* 794 F.2d 265, 267 (7th Cir.),

*cert. denied,* 479 U.S. 961, 107 S.Ct. 458, 93 L.Ed.2d 403 (1986); *Brashich v. Port Authority of New York,* 484 F.Supp. 697, 702 (S.D.N.Y.1979), *aff'd,* 628 F.2d 1344 (2nd Cir.1980).

Recent Supreme Court authority seems to indicate that plaintiffs have standing to maintain this suit without specifically discussing the issue of standing. *See Allegheny County v. ACLU,* 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (local residents and local chapter of ACLU challenged Allegheny County's display of a creche and city of Pittsburgh's display of a Menorah); *Lynch v. Donnelly,* 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (Pawtucket residents allowed to challenge city's inclusion of a creche in its annual holiday display). In a recent Fourth Circuit case decided after the recent Supreme Court decision in *Allegheny,* the court found that the plaintiffs, individual residents of Albemarle County, did have standing to bring suit objecting to the erection of a creche by a private organization on the front lawn of the County Office Building. *Smith v. County of Albemarle, Va.,* 895 F.2d 953, 955 (4th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 74, 112 L.Ed.2d 48 (1990).

A more detailed analysis of the issue of standing appears in *ACLU v. City of St. Charles,* 794 F.2d 265 (7th Cir.1986). In *St. Charles,* the plaintiffs, the ACLU of Illinois and two individuals, brought suit to enjoin the city's display of a lighted Latin Cross during the Christmas season. The court stated that the ACLU had alleged no injury to itself and thus its standing depended on that of its members, the individual plaintiff. The court noted that "the fact that the plaintiffs do not like a cross to be displayed on public property—even that they are deeply offended by such a display—does not confer standing." *St. Charles,* 794 F.2d at 268 (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 485–87, 102 S.Ct. 752, 765–66, 70 L.Ed.2d 700 (1982)). However, the court found that the plaintiffs had standing to bring their action, noting that

"distress was not the only injury" plaintiffs had alleged. *Id.* at 268. Plaintiffs had alleged in their complaint that they had been led to detour, at some inconvenience to themselves, around the streets they ordinarily used in order to avoid the cross. *Id.* Although only one plaintiff had testified to this fact at the hearing, the court noted that "one plaintiff is all that is needed to enable the suit to be maintained, and anyway, the test for standing, as for jurisdiction generally, is the good-faith allegations of the complaint, rather than what the evidence shows." *Id.* at 269 (citing *South East Lake View Neighbors v. Department of Housing and Urban Development,* 685 F.2d 1027, 1034 (7th Cir.1982)).

In this action, Benjamin Baum is one of the plaintiffs. Mr. Baum is an attorney practicing law in Grand Rapids and he alleges that in circulating about the downtown area and into the public buildings as his law practice requires, he has felt compelled to avoid moving into the area where he will necessarily view the menorah which he sincerely believes should be displayed only on private or church owned property. Complaint at ¶ 5. The other plaintiffs have alleged only that "[i]t is contrary to the religious conscience of each of the individual plaintiffs, and is contrary to the purposes for which the organizational Plaintiff was formed, to be forced by government action to endure the presence on public property of a pervasively-sectarian object...." Complaint at ¶ 10. Reading *St. Charles,* the Court is persuaded that Mr. Baum by himself has shown or alleged an actual injury in the complaint, and only one plaintiff is needed to enable a suit to be maintained. I find that Mr. Baum is that plaintiff in the case at hand.

In *American Civil Liberties Union v. Wilkinson,* 895 F.2d 1098 (6th Cir.1990), the Sixth Circuit expressed the same underlying sentiment, saying: "The Governor contends on appeal, as he did in the district court, that the plaintiffs lack standing.

Like the district court, we would be reluctant to dispose of the case on that ground." *Id.* at 1102. The court went on to note that in *Hawley v. City of Cleveland,* 773 F.2d 736 (6th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986), it held that Cleveland residents had standing to bring suit alleging that the maintenance of a chapel at Cleveland Hopkins Airport impaired their use and enjoyment of the airport facilities. The court also cited to the case of *Kaplan v. City of Burlington,* 891 F.2d 1024 (2nd Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2619, 110 L.Ed.2d 640 (1990), where it was held that the residents of Burlington, Vermont, had standing to litigate the constitutionality of the city's decision to permit a menorah to be displayed in City Hall Park.

The tendency of all of the courts of appeals and the Supreme Court is to find standing where there is an allegation of standing in the complaint as there is here. The allegation relates to one individual, Benjamin Baum. I decide the standing issue only as to him, and not as to other members of Americans United, inasmuch as it is unclear who, if any, of the other named plaintiffs are members of Americans United.

*Likelihood of Success on the Merits*

■ In 1989, the Supreme Court decided *County of Allegheny v. ACLU,* 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989), in which a majority of the members of the court joined in an opinion holding that a creche display[2] in the main part of the county courthouse in Pittsburgh, unaccompanied by any other "seasonal" decorations, violated the Establishment Clause of the first amendment to the United States Constitution. Although there were poinsettias and two small evergreen trees around the creche, the Court found that this "floral frame" served only to draw attention to the message inside the frame and contributed to, rather than detracted from, the endorsement of religion conveyed

---

**2.** The creche display was provided by the Holy Name Society, and bore a plaque stating "This Display Donated by the Holy Name Society."

*Allegheny,* 492 U.S. at 580, 109 S.Ct. at 3094, 106 L.Ed.2d at 486.

by the creche. *Id.,* 492 U.S. at 598–600, 109 S.Ct. at 3103–04, 106 L.Ed.2d at 498.

Six members of the Court agreed that a menorah display,[3] situated outside of the courthouse and accompanied by a large Christmas tree did not violate the Establishment Clause, but communicated instead "a secular celebration of Christmas coupled with an acknowledgement of Chanukah as a contemporaneous alternative tradition." *Id.,* 492 U.S. at 618, 109 S.Ct. at 3114, 106 L.Ed.2d at 510.

Prior to *Allegheny,* the court decided *Lynch v. Donnelly,* 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984). In *Lynch,* the court rejected, by a 5–4 vote, the argument that the display of a publicly financed creche in a private park was an endorsement of the Christian religion and therefore a violation of the Establishment Clause. The creche was part of a larger display that included depictions of Santa Claus, reindeer pulling Santa's sleigh, candy cane striped poles, a Christmas tree, and carolers. The majority opinion, written by Chief Justice Burger, relied heavily on the context of the display as part of the Christmas holiday season. *Id.* at 679, 104 S.Ct. at 1362; *Kaplan,* 891 F.2d at 1027–28.

Five years after *Lynch,* the Court decided *Allegheny,* again dividing sharply on the issues. *Allegheny* contains five separate opinions joined in whole or in part by various members of the Court. Justices Brennan, Marshall and Stevens would not allow, or would create a strong presumption against, the publicly supported display of obviously religious symbols. They therefore considered both the creche and the menorah display to be unconstitutional. Justices Blackmun and O'Connor stressed the physical context of the display as the most significant factor. Chief Justice Rehnquist and Justices White, Scalia and Kennedy would allow display of a religious symbol so long as it did not "represent an effort to proselytize." *Allegheny,* 492 U.S. at 664, 109 S.Ct. at 3139, 106 L.Ed.2d at 541. They found that neither the creche

nor the menorah represented such an effort and therefore would have allowed both displays.[4]

It is interesting to note that the Court admitted in *Allegheny* that its previous opinion in *Lynch* was "none too clear" when it said that "[t]he opinion contains two strands, neither of which provides guidance for decision in subsequent cases." *Allegheny,* 492 U.S. at 594, 109 S.Ct. at 3101, 106 L.Ed.2d at 495. Despite this lack of clarity, the five Justices in concurrence and the dissent in *Lynch* did agree upon "relevant constitutional principals: the government's use of religious symbolism is unconstitutional if it has the effect of endorsing religious beliefs, and the effect of the government's use of religious symbolism depends upon its context." *Allegheny,* 492 U.S. at 597, 109 S.Ct. at 3103, 106 L.Ed.2d at 497. Since *Lynch,* the *Allegheny* Court noted, it has been clear that when evaluating the effect of government conduct under the Establishment Clause the court must ascertain whether " 'the challenged governmental action is sufficiently likely to be perceived by adherents of the controlling denominations as an endorsement, and by the nonadherents as a disapproval, of their individual religious choices.' " *Id.* (citing *School District of Grand Rapids v. Ball,* 473 U.S. 373, 390, 105 S.Ct. 3216, 3226, 87 L.Ed.2d 267 (1985)).

The majority opinion in *Allegheny* applied the test found in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), in deciding whether the displays in question violated the Establishment Clause. In *Lemon,* the Court looked to three "tests" to determine whether a government practice violates the Establishment Clause. "Under the *Lemon* analysis, a statute or practice which touches upon religion, if it is to be permissible under the Establishment Clause, must have a secular purpose; it must neither advance nor inhibit religion in its principal or primary effect; and it must not foster an excessive

---

**3.** The menorah was owned by a private religious organization, but stored, erected and removed by the city.

**4.** The Court notes that it relied heavily on the Second Circuit opinion in *Kaplan,* 891 F.2d at 1028, in preparing this synopsis.

entanglement with religion." *Allegheny,* 492 U.S. at 592, 109 S.Ct. at 3100, 106 L.Ed.2d at 493 (quoting *Lemon,* 403 U.S. at 612–13, 91 S.Ct. at 2111). The Court also noted that decisions after *Lemon* had further refined the definition of governmental action that unconstitutionally advances religion: "[t]he Establishment Clause, at the very least, prohibits government from appearing to take a position on questions of religious belief...." *Allegheny,* 492 U.S. at 594, 109 S.Ct. at 3101, 106 L.Ed.2d at 495 (citing *Lynch,* 465 U.S. at 687, 104 S.Ct. at 1366).

Subsequent to *Allegheny,* the Second Circuit decided *Kaplan,* 891 F.2d 1024, the Fourth Circuit decided *Smith,* 895 F.2d 953, and the Sixth Circuit decided *Wilkinson,* 895 F.2d 1098.

In *Kaplan,* plaintiffs brought an action challenging the city's decision to permit placement of a menorah in City Hall Park during Chanukah. The Circuit Court held that the display violated the Establishment Clause. The facts of *Kaplan* are strikingly similar to the facts at hand. City Hall Park, like Calder Plaza, is in front of City Hall, the seat of the City government. Also like Calder Plaza, City Hall Plaza was a traditional public forum [5] "frequently used by members of the public for a wide variety of social, artistic, commercial and political events, including fund raising." *Kaplan,* 891 F.2d at 1026. As in the case at hand, the menorah was erected by the Vermont Lubavitch Group, which is associated with a larger group of Orthodox Jews known as Chabad Lubavitch. It was accompanied by a sign stating "Happy Cha-

nukah" and indicating that the menorah was sponsored by "Lubavitch of Vermont." [6] The display in *Kaplan* was unattended and unaccompanied by other items of display as is the display in Calder Plaza.

Following the holding in *Allegheny,* the *Kaplan* court held that the unattended solitary display of the menorah, like the unattended solitary display of the creche, conveyed a message of government endorsement of religion in violation of the Establishment Clause. The *Kaplan* court recognized, as does this Court, that the menorah, like a creche, is clearly a religious symbol. Whether or not it is also a symbol that has acquired secular components, as some of the Justices in *Allegheny* believed, I need not decide. As in *Kaplan* and *Allegheny,* the menorah here is displayed alone, unaccompanied by other secular decorations of the season. There is nothing to indicate that the thrust of the menorah's message is meant to be secular rather than religious. Further, the menorah at issue has been in past years, and presumably would continue to be, the site of religious ceremonies that involve the lighting of the menorah candles.[7]

In *Kaplan* and in the case before this Court, unlike *Allegheny,* the site of the menorah display is a public forum. Defendant, in our case, argues that this fact means that the City of Grand Rapids cannot restrain expression because of its message, its subject matter, or its content. *See Widmar v. Vincent,* 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981). Significant to the *Widmar* decision was the

---

**5.** Defendant argued in its brief and at oral argument that Calder Plaza is a public forum. Plaintiffs did not really dispute this fact, limiting their arguments to making the point that very few, if any, permits for religious type activities have been granted for Calder Plaza in the last five years and suggesting that Calder Plaza has not become the same "type" of public forum as Lafayette Park, located directly across from the White House. The Court believes, based upon the evidence of the permits issued by defendant over the past five years, that Calder Plaza is a public forum. *See Perry Education Assoc. v. Perry Local Educators Assoc.,* 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983); Affidavit of Nancy E. MacCartney, Director of

Parks and Community Events for Grand Rapids. (Listing Use of Calder Plaza 1986–1990).

**6.** Obviously, the sign accompanying the menorah in Calder Plaza goes further than the sign in the *Kaplan* case, in that it states that the City of Grand Rapids does not endorse Chabad House or the display.

**7.** In *Allegheny* the Court refused to consider whether the menorah was used in religious ceremonies because, among other reasons, the court of appeals had not considered that fact. In *Kaplan,* however, the court did consider the fact of the religious ceremony and "regard[ed] it as quite significant." *Kaplan,* 891 F.2d at 1029.

court's finding that "an open forum in a *public university* does not confer any imprimatur of state approval on religious sects or practices." *Kaplan*, 891 F.2d at 1030 (citing *Widmar*, 454 U.S. at 274, 102 S.Ct. at 276) (emphasis added). Moreover, as the court in *Kaplan* stated, "[t]he existence of a public forum is simply a factor to be taken into account in determining whether the context of the display suggests government endorsement." *Kaplan*, 891 F.2d at 1029 (citing to *Widmar*, 454 U.S. at 273–75, 102 S.Ct. at 276–77). Here, like in *Kaplan*, the site of the menorah display is Calder Plaza, the site of City Hall. This location, unlike the use of an empty classroom at a public university, is heavily weighted with symbolism. It is literally "the seat" of city and county government. The possibility that a religious symbol, erected and maintained on this site for eight to ten days, mostly unattended, might promote the appearance that government has taken "a position on questions of religious belief" is very great. *Allegheny*, 492 U.S. at 594, 109 S.Ct. at 3101, 106 L.Ed.2d at 495.

Furthermore, even if *Widmar* were found to be applicable, I believe, as did the court in *Kaplan*, that a prohibition of the display of unattended solitary religious symbols would not violate the requirement that content-based exclusions serve a compelling state interest and be narrowly drawn to achieve that end. *Widmar*, 454 U.S. at 270, 102 S.Ct. at 274. Upholding the constitutional mandate of the Establishment Clause is a compelling governmental interest and a prohibition limited to displays of unattended solitary religious symbols on public property is narrowly tailored to achieve that purpose. *Kaplan*, 891 F.2d at 1030.

In *Smith*, 895 F.2d 953, the Fourth Circuit upheld, following *Allegheny*, a district court finding that the erection of a creche on the front lawn of the County Office Building violated the Establishment Clause. Like our menorah, the creche was unaccompanied by any other seasonal symbols, contained a disclaimer sign, and was located on a public forum. The court upheld the district court's grant of summary judgment to the plaintiffs and responded to defendants' "public forum" argument by noting that it found no prohibition of the free exercise of religion. The Fourth Circuit held that "[e]xcluding the creche from government property is a justifiable, indeed a necessary, restriction but by no means a prohibition." *Smith*, 895 F.2d at 960.

In *Wilkinson*, 895 F.2d 1098, the Sixth Circuit held that the presence of an empty stable on the grounds of the state capitol in Kentucky was not violative of the Establishment Clause. The stable was to be used for live performances. The Sixth Circuit specifically noted Judge Meskill's dissent in *Kaplan*, which found the placement of the display in a public forum to be "of paramount significance." *Kaplan*, 891 F.2d at 1032. Judge Meskill noted that the city had not in fact sponsored the menorah display, and the only question was whether "a reasonable viewer would *perceive* the city as endorsing the display." *Id.* (emphasis in original). He believed that the sign accompanying the menorah identifying its sponsor helped to insure that the answer was "no." In his dissent, Judge Meskill found that the menorah display did not violate the Establishment Clause and concluded that the denial of permission to display the menorah would treat religious expression differently from other forms of protected expression without any compelling justification. *Id.* at 1034.

The Sixth Circuit stated, in dictum, that while it found Judge Meskill's dissent "persuasive," it did not base its opinion on the public forum issue, finding the case before it to be factually distinguishable from *Kaplan*. *Wilkinson*, 895 F.2d at 1102. The court held that the area within the stable as well as the area immediately adjacent to the stable was a public forum and stated that "the symbol at issue is itself a public forum, while the symbol in *Kaplan* was not." *Id.* at 1102–03. The court found that the structure was capable of "use for non-religious purposes" and was unaccompanied by any display of religious figurines or statues. *Id.* at 1103. The court also found that the Commonwealth of Kentucky had erected extensive holiday decorations

of a non-religious nature, including a lighted Christmas tree 30 feet in height. *Id.* at 1100, 1106. The court relied heavily on the presence of a disclaimer ordered by the district court, which advised that the area was a public forum "available to all responsible citizens and civic and religious groups for holidays ceremonies, pageants or displays" and that the display "was not constructed with public funds and does not constitute an endorsement by the Commonwealth of any religion or religious doctrine." *Id.* at 1099–1100. The Court stated:

> The stable with which we are concerned here must also be viewed in the context of the holiday season. And the effectiveness of the "prominently displayed" disclaimer sign "immediately in front of the stable structure" must be evaluated not only in light of the fact that the structure is on view for only a few weeks between Thanksgiving and Christmas, but also in light of the fact that it is not accompanied by any religious statuary whatever, the fact that the Commonwealth has also erected extensive holiday decorations of a non-religious nature, and the fact that the structure is available for use by everyone, as everyone is expressly told. Taking all these considerations into account, we agree with the district court's conclusion that the signage is effective to negate any implication of an endorsement of a religion.

*Id.* at 1106.

Without such a disclaimer, accompanied by the other factors the court also discussed, the court believed that the stable would represent an impermissible endorsement of religion. *Id.* at 1103. With such a disclaimer, the court believed that the "Commonwealth has given the observer a plain and straightforward answer to the question whether the display constitutes an endorsement of any religion or religious doctrine." *Id.* at 1104.

The facts in the case at hand are different from those in *Wilkinson.* Applying the *Wilkinson* analysis to the case before me, I note first that the menorah was erected alone, unaccompanied by any other seasonal decorations of a nonreligious nature. Secondly, the menorah itself is not a public forum, as the court found the stable to be in *Wilkinson.* The fact that it does not contain religious statuary is inapposite; the menorah itself is a religious symbol and can be seen as a piece of religious statuary in its own right. Finally, I note that defendant admits that the menorah is not available for use by anyone in the community. Unlike the empty stable in *Wilkinson*, the menorah is not capable of use for nonreligious purposes. *Id.* at 1103.

Considering the facts, I am not persuaded that the disclaimer accompanying the menorah is effective to negate any implication of an endorsement of religion. The presence of the disclaimer, in this case, on these facts, does not remove the appearance of endorsement.[8] As the court stated in *American Jewish Congress v. City of Chicago*, "a disclaimer of the obvious is of no significant effect." 827 F.2d 120, 128 (7th Cir.1987); *see also, Kaplan*, 891 F.2d at 1029.

Accordingly, relying on the precedent of *Allegheny* and the guidance offered by *Kaplan, Smith* and *Wilkinson*, I am persuaded that plaintiffs have shown a likelihood of success on the merits.

*Irreparable Injury*

While there is no set definition of "irreparable injury," *see e.g., City of Benton Harbor v. Richardson*, 429 F.Supp. 1096 (W.D.Mich.1977), the moving party must demonstrate a noncompensable injury, for which there is no legal measure of damages. *Merrill Lynch, Pierce, Fenner & Smith v. E.F. Hutton*, 403 F.Supp. 336, 343 (E.D.Mich.1985) (citations omitted). Deprivation of a first amendment right constitutes irreparable harm justifying injunctive relief. *Planned Parenthood Ass'n v. Chicago Transit Auth.*, 592 F.Supp. 544, 555 (N.D.Ill.1984) *aff'd*, 767 F.2d 1225 (7th Cir.1985); *Elrod v. Burns*, 427 U.S. 347,

---

**8.** The Court notes interestingly that the disclaimer accompanying the menorah in Calder Plaza does not state that Grand Rapids does not endorse Chanukah, but only that it does not endorse Chabad House or the display.

373–74, 96 S.Ct. 2673, 2689–90, 49 L.Ed.2d 547 (1976). Accordingly, I am persuaded that plaintiffs have met their burden of proof on this factor also.

*Substantial Harm to Others*

■ Balancing the harm that plaintiffs will suffer if an injunction does not issue against the harm that defendant will suffer if an injunction does issue is not a difficult matter in this instance. Plaintiffs face the possible violation of their first amendment rights. Defendant, on the other hand, does not own the menorah, does not store the menorah, and does not put up the menorah. Defendant merely has to deny a permit to the religious group that wants to display the menorah. Taking into consideration the high likelihood of success on the merits I am persuaded that plaintiffs' harm, should an injunction not issue, outweighs defendant's harm, if one does.

*Public Interest*

Balancing the public interest is more of a difficult question because of the constitutional nature of the rights involved. However, I am persuaded that in this matter that the public interest lies in upholding the Establishment Clause of the first amendment by issuing the preliminary injunction which plaintiffs seek. Accordingly, I will grant plaintiffs' motion for a preliminary injunction and will enjoin defendants from issuing a permit allowing the erection of a menorah display on Calder Plaza.

*Security*

■ One final issue remains to be addressed. In *Roth v. Bank of the Commonwealth,* 583 F.2d 527 (6th Cir.1978), the Sixth Circuit held that a trial court must exercise the discretion required of it by Fed.R.Civ.P. 65(c) and expressly consider the question of requiring a bond before issuing a preliminary injunction. *Roth,* 583 F.2d at 539. However, it also recognizes that the actual requirement of a bond is discretionary with the trial judge. *Id.;* *USACO Coal Co. v. Carbomin Energy, Inc.,* 689 F.2d 94, 100 (6th Cir.1982) (amount of security given by applicant for an injunction is matter of discretion for trial court, which may require no security at all). In this case, I do not believe that the possibility of material damages will follow the granting of plaintiffs' motion. Accordingly, I will not require the posting of a bond. *See Urbain v. Knapp Bro. Mfg. Co.,* 217 F.2d 810, 816 (6th Cir.1954). *See also Crowley v. Local No. 82, Furniture and Piano Moving,* 679 F.2d 978, 1000 (1st Cir.1982) (no bond required in suits to enforce important federal rights or public interests), *rev'd on other grounds,* 467 U.S. 526, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984).